**John Kendal STACEY, Appellant,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary and Mark V. Meierhenry, Attorney General, State of South Dakota, Appellees.**

No. 86–5013.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1986.

Decided Sept. 24, 1986.

John A. Schlimgen, Sioux Falls, S.D., for appellant.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge.

MAGILL, Circuit Judge.

John Kendal Stacey appeals from the district court's[1] denial of habeas corpus relief. Stacey contends that he did not enter his guilty plea knowingly and voluntarily and that he was denied effective assistance of counsel. We affirm the district court's denial of relief.

## I. BACKGROUND.

This case arose when Stacey stabbed a man during a fight. Before trial, the prosecuting attorney made a plea bargain offer that he would recommend no more than a five-year sentence in exchange for a guilty

---

* The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge for the Seventh Circuit, sitting by designation.

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota, Northern Division.

plea, in lieu of a possible ten-year sentence if Stacey was found guilty by a jury. Stacey rejected the offer and was brought to trial on a charge of aggravated assault in South Dakota state court. After a day of jury trial, he accepted the prosecution's offer, pleaded guilty, and received a five-year sentence. He petitioned for and was denied, after an evidentiary hearing, post-conviction relief in the state court. Stacey appealed to the South Dakota Supreme Court, which affirmed the denial of relief. He then sought a writ of habeas corpus in the district court, which denied relief after reviewing the files and records in the state proceedings. This appeal followed. Our jurisdiction is invoked pursuant to 28 U.S.C. §§ 2241, 2254 and 1291.

## II. DISCUSSION.

### A. Knowing and voluntary guilty plea.

■ Stacey contends that he did not enter his guilty plea knowingly and voluntarily because the trial court, when accepting his plea, failed to advise him that he waived his right against self-incrimination and his right of confrontation, as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In this regard Stacey also contends that he did not specifically tell the judge that he understood those constitutional rights and their waiver by a guilty plea. The Supreme Court stated in *Boykin:*

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination * * *. Second, is the right to trial by jury. [citation omitted]. Third, is the right to confront one's accusers. [citation omitted]. We cannot presume a waiver of these three important federal rights from a silent record. What is at stake for an accused facing death or

imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.

*Boykin* at 243–44, 89 S.Ct. at 1712–13.

This court, however, in *Todd v. Lockhart,* 490 F.2d 626, 628 n. 1 (8th Cir.1974) (per curiam) noted that *"Boykin* does not require the express articulation and waiver of these three rights at the time the plea is entered."

Similarly, in *Rouse v. Foster,* 672 F.2d 649, 651 (8th Cir.1982), while recognizing that "a state court may not accept a guilty plea unless the defendant enters it voluntarily and with sufficient understanding of the charge and the likely consequences of his plea," we noted that "there is no constitutional requirement that the trial court employ a particular litany to validate a guilty plea." *See also United States v. Jackson,* 627 F.2d 883, 885 (8th Cir.1980).

In examining Stacey's plea, we follow the Supreme Court's holding that the test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

Thus we must examine whether the record as a whole shows a voluntary and intelligent plea. The record reveals: (1) that Stacey was advised of his constitutional rights, except his right to a jury trial, at his initial appearance before a committing magistrate; (2) that at a joint preliminary hearing and arraignment held a month before the trial, the trial judge specifically advised Stacey of all his constitutional rights;[2] (3) that prior to his guilty plea, Stacey had a day of jury trial, during which he testified and his counsel cross-examined

---

**2.** This court has suggested that having informed a defendant of his rights at an arraignment hearing does not require the procedure to be repeated at a guilty plea hearing if the record shows the defendant understood the conse-

quences of the plea when entered. *Clark v. Solem,* 693 F.2d 59, 60–61 (8th Cir.1982), *cert. denied,* 460 U.S. 1090, 103 S.Ct. 1787, 76 L.Ed.2d 355 (1983).

witnesses; (4) that Stacey had counsel from the preliminary hearing and arraignment onward; (5) that Stacey's counsel stated at the plea hearing that Stacey understood all of his constitutional rights; and (6) that at the plea hearing, the trial judge reviewed in detail with Stacey all remaining effects and consequences of a guilty plea.

Thus we find no error in the trial court's failure to specifically readvise Stacey at the time of the plea of the privilege against self-incrimination and the right to confront witnesses,[3] for the totality of the circumstances shows a voluntary and intelligent waiver.

### B. Ineffective assistance of counsel.

■ Stacey next contends that his counsel was ineffective and made errors that induced him to change his plea to guilty. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set out a two-prong test for determining whether counsel's assistance is so defective as to require reversal of a conviction. The Court held that a petitioner must show, first, that counsel's representation fell below an objective standard of reasonableness, and second, that the errors were so prejudicial that there is a "reasonable probability" that they changed the results of trial.[4] In applying this standard, a petitioner bears a heavy burden of overcoming the presumption that the state trial counsel is competent. *United States v. Johnson*, 751 F.2d 291, 294 (8th Cir.1984).

■ Stacey raises two issues in support of his sixth amendment claim. First, he argues that his counsel was incompetent for failure to impeach the witness Ross Nielsen, who allegedly saw the fight. Stacey claimed at trial that he used the knife to defend himself against an attack by the victim and his brother. The State, however, claimed that the brother intervened only after the victim was stabbed. Stacey's counsel spoke with Nielsen before trial, who confirmed Stacey's story that both brothers were beating Stacey before the stabbing.[5] When Nielsen was called as a witness, however, he unexpectedly corroborated the State's version. Stacey's counsel did not attempt to impeach him, but merely cut short his direct examination.

We note that labeling counsel's actions as "trial strategy" does not "automatically immunize an attorney's performance from sixth amendment challenges." *Kellogg v. Scurr*, 741 F.2d 1099, 1102 (8th Cir.1984). We conclude, however, that counsel's handling of Nielsen can be called legitimate trial strategy. *See, e.g., Lindhorst v. United States*, 658 F.2d 598, 604–05 (8th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309 (1982). An attempt to impeach Nielsen may have only emphasized the State's version of the facts. Thus, Stacey's claim fails the first prong of the *Strickland* test, for counsel's performance cannot be called unreasonable in this regard.

■ Second, Stacey argues that his counsel was incompetent for failure to subpoena the witnesses Jim Novy and Larry McMillan, who also allegedly saw the fight. Counsel spoke with both men before trial[6] and unsuccessfully moved for a continuance on the ground that their testimony was necessary to establish self-defense.

---

3. Because Stacey had already testified at trial, his privilege against self-incrimination was no longer there to be waived. The fact that he also exercised his right to confront witnesses at trial supports his knowledge of that right.

4. The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, —— U.S. ——, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

5. The record reflects that counsel failed to take a written statement from Nielsen when they

spoke before trial. No explanation was offered for this failure. Although a written statement would probably have facilitated impeachment, we are unwilling to conclude that counsel's failure to get such a statement was in itself "unreasonable."

6. The record reflects that counsel also failed to get written statements from both men, again with no explanation offered.

Regarding Novy, the record reveals that counsel tried several times to contact him the week before trial and prepared a subpoena for him. Novy, however, had left the area, so the subpoena was not served. Because the record reflects that counsel did not know, nor should have known, Novy's new address from the information provided him, we find that he was reasonably diligent in trying to get Novy to testify.

It is evident, however, that counsel failed to use proper service procedures as to McMillan. Counsel issued a subpoena for McMillan, which was defective for failure to comply with Uniform Act requirements. On the day of trial, counsel explained McMillan's absence by claiming that McMillan had previously agreed to testify but had changed his mind. Because McMillan was in Colorado, it was too late to compel his presence.

As it appears that counsel was not diligent in this regard, thus satisfying the first prong of *Strickland,* we must now examine, under the second *Strickland* prong, whether the error was so prejudicial that there is a "reasonable probability" either that it changed the result of trial or "that, but for counsel's errors, [Stacey] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* — U.S. —, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Before Stacey entered a guilty plea, counsel spoke by telephone with McMillan and concluded that he was not a valuable witness because he had not seen the entire fight and thus could not establish whether the victim was stabbed before or after the brother became involved. Counsel repeated these doubts concerning the value of McMillan's testimony at the post-conviction hearing. Counsel also discovered before trial that McMillan was a convicted felon and thus his credibility was questionable.[7] After the day of trial, McMillan wrote Stacey's counsel a letter in which, as in their prior telephone conversation, he detailed his knowledge of the incident. McMillan, however, did not disclose whether he had actually seen the stabbing.[8] Given McMillan's slim recollection of the fight, we conclude that Stacey has failed to show a reasonable probability of material prejudice because of counsel's failure to get McMillan to testify.

We have examined Stacey's additional contentions, and find them to be without merit. Accordingly, the judgment of the district court is affirmed.

---

**7.** In trying to get a continuance, counsel nonetheless argued at trial that McMillan was essential as a witness in order to establish self-defense.

**8.** The portion of McMillan's letter describing the fight reads as follows: "We looked out and seen [sic] two people holding John Stacey. * * * I seen [sic] one of the guy [sic] kicking him in the stomach and hitting him in the face. Jim and I run [sic] out to the fight and John [Stacey] was starting to run. One guy yelled that he had been stabed [sic]." When McMillan related his account before the trial to Stacey's counsel, counsel responded that in view of the short period of time that McMillan had seen the fight, his story "wouldn't do much good."