**Edward Louis WALKER, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 86–1041.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1986.

Decided Dec. 16, 1986.

Marie-Bernarde Miller, Little Rock, Ark., for appellant.

Sandra Johnson-Buchanan, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY and BOWMAN, Circuit Judges, and REGAN,* Senior District Judge.

HEANEY, Circuit Judge.

Petitioner Edward Louis Walker, an inmate at the Cummins Unit of the Arkansas Department of Corrections, appeals from the district court's denial of habeas relief. 28 U.S.C. § 2254. We reverse.

On November 29, 1982, a jury convicted Walker of three counts of forgery in the second degree and of one count of theft of property in the Jefferson County, Arkansas, Circuit Court. The jury sentenced Walker as a habitual offender to sentences

* The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

totaling sixty years. The trial court ordered that Walker serve the sentences consecutively, meaning that Walker would serve sixty years without possibility of parole.[1] This punishment was for taking less than $1,000 from a person with whom he had had a homosexual relationship.

In an appeal to the Arkansas Supreme Court, Walker argued that the trial court erred in not granting a continuance to secure a material witness. The Arkansas Supreme Court affirmed the convictions finding that Walker's attorney had not requested a continuance at trial and therefore had waived Walker's right to raise the issue on appeal. *Walker v. State*, 280 Ark. 17, 655 S.W.2d 370 (1983).

Walker next sought post conviction relief under Ark.R.Crim.P. 37. In an unpublished per curiam opinion, the Arkansas Supreme Court denied Walker relief. *Walker v. State*, No. CR 83–51, slip op. (Ark.S.Ct. January 9, 1984) [Available on WESTLAW, AR-CS database].

In seeking habeas corpus relief in federal district court, Walker argued, among other things,[2] that counsel provided ineffective assistance during the trial. After finding that Walker had met the exhaustion requirements of 28 U.S.C. § 2254(b), the district court denied Walker's petition.

On appeal to this Court, Walker contends that counsel was ineffective in failing to secure a material witness, Stanley Anderson, for trial. In oral argument the state conceded that "the only issue on appeal is whether or not counsel was ineffective in failing to secure the presence of Mr. Anderson."

We reverse because the defense counsel's failure to seek a continuance in order to obtain Anderson's testimony constituted serious error. The error was magnified by counsel's failure to investigate what Anderson's testimony might have been even though Walker had stated that Anderson would support his version of the facts and by counsel's failure to offer mitigating facts at sentencing, even though counsel knew or should have known that Walker could be subject to the habitual offender statute. The error resulted in prejudice to Walker's defense such that in its absence it is reasonably probable that the jury's verdict would have been different.

**BACKGROUND**

The following is undisputed. On February 21, 1982, Walker cashed an $85 check drawn on the account of Lee Andrew McNeal at the Simmons Bank in Pine Bluff, Arkansas, using McNeal's Arkansas Department of Corrections Employee I.D.[3] On February 24, Walker withdrew $350 from McNeal's savings account. On February 26, Walker attempted to withdraw $425 from McNeal's savings account. By this time, however, McNeal had complained to the bank about unauthorized transactions in his account. The bank employees therefore called the police. Before the police arrived, Walker left the bank because the "cashier was taking too long." Walker left a withdrawal slip and McNeal's Department of Corrections I.D. at the bank. The bank employees gave a description of Walker to the police who picked up Walker a couple of blocks from the bank as he was walking down the street shortly thereafter. A police officer patted Walker down and

---

1. Walker had been convicted: 1) of forgery (involving an unknown amount) on May 29, 1967, and sentenced to six years in prison; 2) of forgery (apparently involving $109.13) on April 23, 1975, and sentenced to two years; 3) of burglary and theft of property (involving property valued at $5,000 to $6,000) on March 17, 1977, and sentenced to ten years; and 4) of possession of a firearm by a felon on February 4, 1982, and fined $750. Under Ark.Stat. 43–2828(4) (1977), Walker is classified as a "Fourth Offender" and under Ark.Stat. 43–2829(B)(5) (1977 & Supp.1985) is not eligible for parole.

2. In federal district court Walker also claimed that (1) the convictions constituted double jeopardy; (2) that he was subjected to an impermissively suggestive identification procedure; and (3) the sentence imposed constituted cruel and unusual punishment.

3. McNeal apparently had worked for the Arkansas Department of Corrections. At the time of the trial he was employed as a teacher.

found McNeal's checkbook. The officer testified that Walker told him his name was Edward Smith. Walker was taken back to the bank where the employees identified him. Before being taken back to the bank, the police officer said Walker told him, "Look, don't take me back there. * * I don't want to go back there. It's too embarrassing. I'll tell you what you want to know."

The police officer took Walker to jail. Four days later, on March 2, 1982, Walker was first read his *Miranda* rights. Walker signed a waiver form acknowledging that he understood his rights and then made the following statement:

> I got the checkbook from McNeal and wrote a check at Simmons Branch Bank and tryed [sic] to cash another. I cash[ed] [one] for $85.00 and one for $350.00. Both checks was [sic] cash[ed] at different Branch Bank[s] and attempted to cash another for the amount of $425.00. The cashier was taking too long so I just walked out. Left I.D. and withdrawal their [sic].
>
> Edward Walker

At trial the primary issue was whether McNeal gave Walker authorization to negotiate his checks and withdraw money from McNeal's savings account. Lack of authorization is an element that must be proved by the state. *See* Ark.Stat. 41–2302 (1975). McNeal, in his testimony, claimed he had not given Walker authorization to negotiate his checks and withdraw money from the savings account.

McNeal testified that on February 20, 1982, he let Walker stay in his house overnight; that on the night of February 20, 1982, he and Walker slept in the same room and had a "homosexual relationship;" that at least once before in the summer of 1981 Walker stayed at his home for two weeks; and that in the past he had given Walker money "on several occasions" and allowed Walker to drive his car.

On the morning of February 21, 1982, McNeal stated that he and Walker left together out McNeal's front door, with McNeal locking the door behind them. Later that afternoon, McNeal claims to have returned from work and parked his car in his carport. According to McNeal, both his front and back doors were chained from the inside and a third door to the den, to which McNeal had no key, was locked. McNeal said at that point he "knew someone had been there by the mere fact that both chains were on the door." After prying off the chain to one of the doors, McNeal said he discovered his wallet and some clothing were missing. Later, although it is unclear when, McNeal learned from an unnamed friend that Walker had taken other clothing and his checkbook.

How Walker got back into McNeal's locked house was not revealed at trial. Nor was it stated in the testimony when, if at all, McNeal reported the break-in to his house and the theft of his wallet to the police.[4] McNeal apparently reported the theft of his checkbook to Simmons Bank on February 23, two days after the alleged theft, and signed an affidavit to that effect for a bank official, Terry Young.[5]

Walker did not testify on his own behalf. The defense offered two witnesses whom defense counsel asked a total of forty-five questions. Most of the questions asked of the first witness concerned a party at McNeal's house which Walker did not attend. The second witness, a private club owner, was asked whether he had seen Walker and McNeal together at his club.

---

4. Neither McNeal, nor officer Madsen (the officer who arrested Walker), nor Detective Sergeant Boyd testified that McNeal reported the theft of his wallet and clothing.

5. This makes sense because McNeal claimed his car, which he had driven into his carport on February 21 was in the shop when he went to report the theft of the checkbook to Terry Young. Thus, testimony by Detective Sergeant Boyd that Terry Young called him on February 21 to report the forgery seems to be incorrect. McNeal's explanation on direct for reporting the theft of the checkbook so late was that he did not learn of it until his friend told him that Walker had taken it. In his direct testimony, however, McNeal stated that he kept his checkbook in the same "chest-of-drawers" where he kept his wallet.

He had seen them once together drinking whiskey for which Walker had paid. The state did not cross-examine the witnesses.

Walker's attorney failed to secure for trial two other witnesses: Joe Young and Stanley Anderson. Stanley Anderson was at that time incarcerated in the state penitentiary. Walker's counsel failed to get an order to have Anderson testify as required by Arkansas law. Ark.Stat.Ann. § 43–2022 (1977); *See also Walker*, 280 Ark. at 20, 655 S.W.2d at 371.

Walker told his attorney that Anderson would testify that McNeal had once stated: "Whatever I've got is yours. Here is a passbook or here is the check. Go cash a check if you need some money. Go get some money." Walker's attorney read this into the record during a recess out of the hearing of the jury. He failed, however, to ask the court for a continuance in order to secure Anderson's testimony.

After the jury found Walker guilty on all three counts of forgery and one count of theft, the trial court judge instructed the jury on sentencing Walker under the Arkansas Habitual Offender Statute. Ark. Stat.Ann. § 41–1001 (Supp.1981).[6] Under the statute, the jury sentenced Walker to twenty years on the first forgery count, ten years on the second forgery count, twenty years on the third forgery count, and ten years on the theft count. The judge decided immediately thereafter without explanation, or any objection from the defense counsel, to impose consecutive sentences.[7] Defense counsel also failed to of-

fer the judge or jury significant mitigating factors.

**ANALYSIS**

We find that defense counsel's failure to request a continuance to secure Anderson as a witness was an error resulting in prejudice to Walker.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established the standard of review for claims of ineffective assistance of counsel. To be ineffective, counsel's representation must be deficient and prejudicial to the defendant's case. *Id.* at 687, 104 S.Ct. at 2064. Deficient assistance means performance which falls below a standard of reasonableness as measured by prevailing professional standards. *Id.* at 688, 104 S.Ct. at 2065. Prejudicial assistance occurs when it is reasonably probable "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In examining defense counsel's performance, we are mindful that ineffective assistance of counsel complaints based on the failure to secure witness testimony are disfavored, *see Sherrill v. Wyrick*, 524 F.2d 186, 190 (8th Cir.1975), because presentation of evidence is a matter of trial strategy. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir.1985). Defense counsel's failure to request a continuance to secure Anderson as a witness, however, cannot be attributed to trial strategy. Counsel attempted to have the witness testify, but followed improper procedures to obtain a witness from the state penitentiary. Coun-

---

**6.** The habitual offender statute required two prior felony convictions before a defendant could be subject to enhanced sentencing. Ark.Stat. § 41–1001(1)(d) & (2) (Supp.1981). The prosecutor in this case offered four convictions: forgery, felon in possession of a firearm, burglary, and theft of property. However, one of the convictions appears to have been improperly admitted. The trial court mistakenly counted the burglary and the theft as separate offenses. These both were committed on the same date. Under Arkansas law, the burden was upon the prosecution to show that the attending felony (in this case the theft of property) was not the object of the burglary. *Finch v. State*, 262 Ark. 313, 556 S.W.2d 434 (1977). Without this show-

ing, burglary and theft of property could only constitute one offense under section 41–1001(2) (1981). Defense counsel did not object to this error.

**7.** Under Arkansas law, although a trial judge has discretion to impose sentences concurrently or consecutively, there must be something in the trial transcript indicating that the judge in fact exercised discretion. *See Acklin v. State*, 270 Ark. 879, 606 S.W.2d 594 (1980). Here there is no indication in the transcript that the trial judge exercised discretion, and no indication that counsel objected to this failure.

sel moreover failed to interview the witness. Clearly counsel could not have strategically decided a witness would be unnecessary or harmful without even investigating the nature of his possible testimony. *See Wade v. Armontrout,* 798 F.2d 304, 307 (8th Cir.1986) (holding that "[i]nvestigation is an essential component of the adversary process"). This is especially true because Anderson's testimony, assuming he would have testified as Walker told defense counsel he would, would have tended to rebut the state's case on the issue of authorization.

Deciding whether prejudice resulted in this case is a more difficult question. It involves speculation on what the witness would have said had he been properly called to testify. *Schwander,* 750 F.2d at 494. Here, however, the degree of speculation is reduced since counsel read into the record the witness's anticipated testimony. While it cannot be absolutely certain that Anderson would have testified as anticipated, there is no indication that he would not have.

Under the prejudice prong of *Strickland,* we also must examine counsel's error in light of the strength of the state's case. *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986). Clearly, if the state has a strong case, and the error would not substantially weaken it, prejudice would not result. In this case, however, the state does not have a strong case. The evidence showing that McNeal did not authorize Walker to negotiate McNeal's checks or withdraw money from McNeal's savings account is not substantial. First, Walker and McNeal had an intimate relationship starting in 1981 when Walker spent two weeks with McNeal. In their relationship Walker had also assumed a dependent role in that he had borrowed money from McNeal, slept in McNeal's home, and driven McNeal's car. That McNeal willingly made these offerings to Walker in the past

suggests that authorization to write checks and withdraw money was not unlikely.

Second, the state's case had numerous inconsistencies and ambiguities: It was not clear how Walker got back into McNeal's home to take the wallet and checkbook. McNeal suggested strongly on direct examination that Walker entered the house after they left together on the morning of February 21, 1982, without McNeal's permission. Yet on cross-examination, McNeal stated "I don't even know that he was there." One might also question why, on returning to his home, McNeal noticed his wallet missing but not his checkbook even though both were kept in the same chest-of-drawers. Furthermore, McNeal apparently never reported the theft of his wallet and clothing to the police.

These ambiguities and inconsistencies do not prove that Walker was necessarily innocent. They do, however, show that the state's case was much less than overwhelming, especially considering that most of the ambiguities and inconsistencies in the state's case came to light, not through defense counsel's cross-examination, but through the state's own direct examination. Thus, we cannot accept the state's argument that no prejudice resulted because defense counsel "vigorously" represented Walker and was "familiar with the facts." *Wade,* 798 F.2d at 307.

The district court found that Walker was not prejudiced because McNeal specifically denied that he authorized Walker to negotiate his checks and withdraw money from his savings account. Furthermore, Anderson's credibility as a witness would have been subject to attack because he was a convicted felon. Ark.Unif.R.Evid. 609(a). This does not mean, however, that Anderson's testimony would not have been believed by the jury. This testimony would be considered by the jury along with the other evidence of record.

We believe, contrary to the district court and the appellees,[8] that the other evidence

---

**8.** The appellees also claim that by fleeing the bank and in giving the police officer a false name, Walker indicated that he did not have

McNeal's consent. However, it is unclear whether Walker "fled." He left the bank and had only walked two blocks when the police

in the record does not reflect strong evidence of guilt. Anderson's testimony could have helped uncover additional weaknesses in the state's case or made existing weaknesses seem more pronounced. Moreover, as it stood at trial, McNeal's claims of nonauthorization went completely unrebutted. Anderson's testimony could have rebutted McNeal's testimony. While we do not hold that this rebuttal would have been successful, we do hold that it is reasonably probable that if Anderson had been able to testify, the jury would have decided differently on the issue of Walker's guilt.

## CONCLUSION

Walker's prior felony convictions, although serious matters, did not involve violence or large amounts of money. The crimes of which the jury found Walker guilty in this case were not violent and the value of the property involved was less than $1,000. For his offenses Walker was sentenced as a habitual offender to sixty years without possibility of parole. Walker's attorney knew or should have known before trial that such a result was possible. The defense attorney should have sought to secure the presence at trial of a witness who might have rebutted crucial testimony for the prosecution. Reasonable efforts, however, were not made to secure his presence. This unprofessional error, coupled with others, shows that the defense attorney's representation on the whole was deficient. In addition, this error prevented Walker from presenting the only witness whose testimony could have rebutted the state's case. Had this witness been able to testify, we believe it is reasonably probable that the jury would have reached a different verdict.

Reversed.

picked him up. Walker apparently did not resist the officer's arrest. Walker's giving of a false name does not necessarily indicate he did not believe he had McNeal's consent. It could also indicate that he, no more than McNeal,

wanted the nature of their relationship revealed. After all, Walker stated that he did not want to go back to the bank because it would be "embarrassing." He otherwise said he would tell the officer "everything he wanted to know."