**David RODE, Petitioner,**

v.

**A.L. LOCKHART, Director Arkansas Department of Correction, Respondent.**

No. PB–C–86–620.

United States District Court, E.D. Arkansas, Pine Bluff Division.

Nov. 30, 1987.

Robert M. Ford, Wynne, Ark., for petitioner.

Jack Gillian, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for respondent.

## ORDER

HENRY WOODS, District Judge.

This Court has reviewed the findings and recommendations made by the Magistrate after conducting a hearing in this matter and concludes that they should be, and they are hereby, approved and adopted as this Court's findings in all respects. Judgment will be entered directing that the writ of habeas corpus issue within 120 days of today's date unless the State undertakes to retry the petitioner within that period of time.

## FINDINGS OF FACT AND RECOMMENDATION

H. DAVID YOUNG, United States Magistrate.

Petitioner was convicted of the first-degree murder of his wife and sentenced to life imprisonment after a jury trial in Faulkner County Circuit Court on February 3, 1981. This conviction was affirmed by the Supreme Court of Arkansas in *Rode v. State*, 274 Ark. 410, 625 S.W.2d 469 (1981).[1]

■ Petitioner unsuccessfully gained the assistance of attorneys and others in filing a Rule 37[2] collateral attack in state court. He was aware that this was his "next step" in challenging his conviction, but when he finally attempted to file a *pro se* petition, it was returned as being untimely.[3] Exhaustion is not an issue, but, because petitioner procedurally defaulted, in pressing his claims in state court, respondent asserts that he is procedurally barred from proceeding in federal court. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In *Wainwright v. Sykes, supra,* the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court, that is, if he was aware of the ground but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See also Clark v. Wood*, 823 F.2d 1241, 1250–51 (8th Cir.1987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir.1987). The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), and *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause." *Smith v. Murray*, 106 S.Ct. 2666. However, one can discern from these cases several circumstances in which cause might be found: first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 106 S.Ct. at 2646; second, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, *see id.* at 2650; third, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); or fourth,

---

1. In his appeal, petitioner asserted that the trial court erred in allowing the jury to take an item of evidence to the jury room, but the supreme court refused to review this assertion of error since no objection had been interposed by counsel. Additionally, petitioner's evidentiary sufficiency claim was rejected.

2. Rule 37, Arkansas Rules of Criminal Procedure.

3. Rule 37 petitions must be filed within three years of "commitment."

if the litigant failed to receive the effective assistance of counsel. *See Murray v. Carrier*, 106 S.Ct. at 2646.

In response to this Court's March 17, 1987, Order, petitioner filed a pleading aimed at demonstrating that he had cause for his procedural default. In sum, his explanation for procedurally defaulting in presenting his collateral attack to the state court was grounded in his status as a *pro se* litigant. This explanation was determined to be without merit, but, because the allegations of his habeas petition dealt with one of the apparent types of cause (ineffective assistance of counsel), an attorney was appointed to represent petitioner in anticipation of a hearing to be held. After the Court's May 5, 1987, Order acknowledging the possibility that counsel's ineffectiveness needed to be examined with regard to the *Wainwright v. Sykes* issue, the Eighth Circuit Court of Appeals handed down its decision in *Leggins v. Lockhart*, 822 F.2d 764 (8th Cir.1987). In part, *Leggins* held that "a claim of ineffective assistance of counsel must be presented to the state court as an independent claim before it may be used to establish cause for [a] procedural default." *Id.* at 768, n. 5. Of course, this, the petitioner failed to do herein because he procedurally defaulted in pressing *any* of his claims before the state court.

There is no evidence of any external impediment which prevented him from raising his habeas issues in state court, and the issues he raises are not so novel that they were unavailable to him. Since he cannot rely upon the asserted ineffectiveness of his trial counsel as cause, *id.*, is he barred from any federal review of his conviction? The clear answer from *Murray v. Carrier* is no. Our constitutional safeguards have always permitted review of a conviction wherein manifest injustice has resulted. As the Court points out in *Murray*, procedural default in state court will not bar federal habeas review of a conviction wherein the defendant can make a colorable showing of actual innocence. *Murray v. Carrier*, 106 S.Ct. 2650. In this case, the petitioner is undoubtedly guilty of killing his wife, but, as the discussion *infra*

will make clear, he, in all probability, is not guilty of the offense for which he stands convicted, namely, first-degree murder. It is the fact that a constitutional violation (ineffective assistance of counsel) probably resulted in the conviction of one who is actually innocent which provides the cause and prejudice to excuse petitioner's state procedural default.

The facts of this case are particularly tragic. In August of 1980, petitioner, twenty-nine years of age, his wife, and their one-month-old baby were traveling in their vehicle from Michigan to Texas. They had been visiting relatives in Michigan and Kentucky and were returning to their home in Abilene, Texas, where petitioner was a college student and his wife was an Air Force nurse.

Shortly after midnight on August 19, 1980, [petitioner] drove to a service station in Conway and, in an emotional state, told a witness that ten minutes previously his wife and four-week-old child had been the victims of a hit and run accident. He stated that the accident occurred on the interstate highway while he was changing a tire on his car. His clothing had blood on it, the baby had blood over most of its body and his wife, who was slumped over in the front right seat of his car, was bloody. The police and ambulance personnel promptly answered calls and began their separate duties. The victim and the baby were taken by ambulance to the hospital where she was pronounced dead but the baby was found to be uninjured. [Petitioner] went with the police but could not find the accident scene. Additional police, in an extensive search, could not find any evidence of a hit-and-run accident on the highway.

Later, [petitioner] stated to another witness that the accident took place while he was getting a bottle for the baby and to a third witness he stated that it took place while he was getting diapers for the baby. The police then observed that the tire had not been changed and that the blood splatters in

and on the car did not correspond with [petitioner's] version of the facts.

The attending physician at the hospital found that the injuries to the victim were consistent with a beating and were not consistent with a hit-and-run accident. At trial the State Medical Examiner testified that the victim sustained trauma to the head, chest, extremities, neck and voice box. She had bruises around the eyes and to the eyelids, a broken nose and bridge of the nose, a subdural hematoma, multiple abrasions on her neck and her adam's apple was crushed from side to side. He testified that the latter injury was a "classic picture of manual strangulation." The medical examiner observed damage to the dorsum of her hand which is consistent with a defense type of injury which occurs when a victim raises his or her hand for protection. The chief criminologist for the State Crime Laboratory testified that the clothing worn by the victim gave no evidence of having been in a hit-and-run accident. A Conway physician testified that [petitioner] had abrasions on his fingers and knuckles and there was a large bruise in the palm of his left hand. X-rays of the [petitioner's] left hand reflected a compression fracture at the base of the fifth metacarpal. The witness testified that the injuries to [petitioner] were caused by a force angularly pushing the bone backward, as would be caused by striking someone with a closed fist. These injuries would be consistent with beating someone with fists and slapping them with an open hand.

*Rode v. State, supra,* 274 Ark. at 411–12, 625 S.W.2d 469.

Because of the obvious inconsistencies in petitioner's statements and the physical facts, and the absence of any other potential suspect, petitioner was taken into custody and charged with first-degree murder.

Within a day or so of the death, Frank E. Shaw, a Conway attorney, was appointed to represent petitioner. Shaw testified at the habeas hearing that when he met with petitioner, petitioner confessed to him that he had lied to the police when he gave the hit-and-run statement. Petitioner further explained to Shaw that he and his wife had become embroiled in a heated argument about the paternity of their child and that he had gone into a rage and beat his wife to death. Shaw explained that the trial court became aware of the fact that petitioner did not financially qualify for the services of appointed counsel (possibly when petitioner was able to post a substantial bond), ordered Shaw relieved as counsel, and directed petitioner to retain an attorney. Thereafter, Shaw had no further contact with this case until he testified herein.

Petitioner requested names of attorneys from the Conway representative of his bonding agency and was told that the owner of the bonding company, Bryce Marler, possibly could be of assistance. Marler resided in Heber Springs, Arkansas. After petitioner drove to Abilene and gathered all of his belongings, he traveled to Heber Springs and met with Marler at his office. The attorney whom petitioner ultimately retained was also present. He was also a resident of Heber Springs. After a conversation with Marler and the attorney, a fee arrangement[4] was consummated and the attorney undertook to represent petitioner.

Petitioner's trial counsel had access to all of the state's evidence (see discussion above) and was aware of the fact that marital disharmony existed between petitioner and his wife. Petitioner's mother had conferred with counsel about the matrimonial difficulties, and counsel had interviewed the wife's Air Force supervisor, who related rumors of infidelity. Petitioner testified at the habeas hearing that, as with his first court-appointed counsel, he

---

4. Evidence was introduced at the hearing which cast a shadow upon the ethical legitimacy of the fee arrangement between counsel and petitioner. The bondsman had some apparent financial interest in the arrangement, and after petitioner was convicted, the net effect of the "arrangement" was that all of petitioner's property (primarily consisting of a truck and thirty-six-foot travel trailer) plus $5,000.00 was paid and/or forfeited to the attorney. This evidence was not relevant to the merits of the habeas petition, but was admissible for credibility purposes.

had told his retained counsel the "truth" about beating his wife to death. Counsel disputed petitioner's testimony in this regard, but his testimony is not credible. It is not credible because, in addition to the fact that petitioner had willingly confessed the truth to his original court-appointed counsel, it is undisputed that he had also related this "truth" to Marler (petitioner's bail bondsman) and Marler's wife. It is hard to believe that petitioner would have told the "truth" to his original court-appointed attorney and his bail bondsman and yet not have told the "truth" to the attorney who was actually going to represent him.[5]

Notwithstanding all of these facts, counsel persisted in defending petitioner on a "hit-and-run" theory which was totally incredible. Counsel's theory was that the victim was standing near the front left of the automobile when the lights of an oncoming vehicle caused her to leap over the hood of the car and land on the ground head first, causing the trauma injuries. Counsel's explanation about the extensive damage to the victim's throat was that the petitioner had dropped her while loading her into the car to go for emergency services after the "hit-and-run." Petitioner did not testify at trial (see discussion *infra*), and counsel relied entirely upon hypothetical questions posed to the State Medical Examiner to "prove" those theories (Tr. 198–214). No reasonable juror could have accepted those hypothetical explanations when the State Medical Examiner testified that the wife died from trauma to the head, consistent with a beating, and that her neck injuries (with fingernail impressions) presented a "classic" case of strangulation (Tr. 191, 195).

Even had petitioner testified, the defense put forward by counsel would have been incredible to the jury. But, without his testimony, it was ridiculous. There was not one shred of physical evidence or any testimony presented to the jury which reasonably could have led a juror to accept the defense theory. Nevertheless, the absence of petitioner's testimony is of considerable importance herein.

Petitioner testified that he told his attorney the truth about killing his wife in a fit of rage. Counsel disputed petitioner in this regard, but, as alluded to earlier, the credible evidence supports petitioner's testimony. Counsel did testify that he recommended that petitioner not testify. Had petitioner not told counsel the truth and insisted upon the "hit-and-run" theory of defense, counsel's advice to petitioner would have fallen below the standards of a reasonably competent attorney because, without petitioner's testimony, there were no facts to support the defense.

However, the Court finds that counsel's representation was far more deficient than this scenario. For, in fact, he knew that petitioner had killed his wife and that *all* of the facts to be presented to the jury would compel this conclusion. The theory offered by counsel cannot be dismissed as a simple strategical error; *see, e.g., Stacey v. Solem*, 801 F.2d 1048, 1051 (8th Cir.1986). Rather, it was tantamount to no defense. In relying upon this defense and failing to put petitioner on the stand, petitioner's "attorney failed to exercise the skill and diligence that a reasonably competent attorney would exercise under similar circumstances." *Williams v. Lockhart*, 784 F.2d 873 (8th Cir.1986) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

In addition to a showing of incompetence, a federal habeas petitioner must also demonstrate that he was prejudiced by counsel's performance before a Sixth Amendment violation may be found. *Strickland v. Washington, supra*. Without a showing of prejudice, petitioner will be entitled to no relief. *See, e.g., High Elk v. Solem*, 804 F.2d 496 (8th Cir.1986); *Walker v. Lockhart*, 807 F.2d 136, 139 (8th Cir.1986). The prejudice component of the *Strickland* ineffective assistance of counsel test has been interpreted to require a petitioner to demonstrate to "a reasonable probability that he would have been acquitted had his counsel" not been deficient. *Williams v. Lockhart, supra* at 874. There is no presumption of prejudice re-

---

5. Even if this credibility dispute were resolved in favor of petitioner's trial counsel, the result

herein would not be altered for reasons set forth *infra*.

gardless of the pervasiveness of counsel's errors. *Fink v. Lockhart,* 823 F.2d 204 (8th Cir.1987).

The strength of the state's case against an accused is an important factor to consider in resolving the prejudice issue. *Walker v. Lockhart, supra* at 140 (citing *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986)). The Court has already alluded to the overwhelming evidence in this case that petitioner killed his wife,[6] but this does not automatically resolve the prejudice issue against the petitioner. The State's strong evidence that petitioner killed his wife does not necessarily lead to the conclusion that a competent attorney could not have achieved a verdict of acquittal for the offense for which petitioner stands convicted, first-degree murder.

The first-degree murder statute under which petitioner was tried and convicted reads as follows:

> **Murder in the first degree.**—(1) A person commits murder in the first degree if:
>
> * * * * * *
>
> (b) with the premiditated and deliberated purpose of causing the death of another person, he causes the death of any person. . . .

Ark.Stat.Ann. § 41–1502(1)(b).

The Court did charge the jury on the lesser included offenses of:

> **Murder in the second degree.**—(1) A person commits murder in the second degree if:
>
> * * * * * *
>
> (c) with the purpose of causing serious physical injury to another person, he causes the death of any person. . . .

Ark.Stat.Ann. § 41–1503(1)(c),

and

> **Manslaughter.**—(1) A person commits manslaughter if:
>
> * * * * * *
>
> (b) he recklessly causes the death of another person. . . . .

Ark.Stat.Ann. § 41–1504(1)(c). The maximum sentences of incarceration for second-degree murder and manslaughter were twenty years and ten years, respectively.

By either refusing to allow petitioner to take the stand or advising petitioner not to take the stand, counsel effectively foreclosed any arguments which could have been made in support of a conviction for one of these lesser included offenses. The State's evidence of premeditation, required for a first-degree murder conviction, is not strong. Had petitioner testified, had the jury been apprised of the marital problems present, and had the defense theory not have been so facially incredible, a reasonably competent attorney could have made a mitigation argument in favor of a conviction for a lesser included offense. The petitioner has made a colorable showing of actual innocence of first-degree murder, and had counsel not been deficient in his representation, there is a reasonable probability that petitioner would not have been convicted of this charge. Had he been convicted of the more serious lesser included offense, second-degree murder, his maximum punishment would have been no more than twenty years of imprisonment, rather than the life sentence which he received.[7]

In sum, petitioner's attorney gave the jury two alternatives: convict petitioner of first-degree murder, or set him free. This effectively gave the jury only one choice. Counsel's performance in this regard was deficient, and petitioner was thereby prejudiced. It is therefore the recommendation of the undersigned magistrate that the writ of habeas corpus issue within 120 days of the filing of the District Court's Judgment unless the State undertakes to retry the petitioner within that period of time.

---

**6.** It is the strength of this evidence which makes counsel's defense efforts so incompetent herein.

**7.** At the habeas hearing, there was some evidence that the prosecution had made an offer to counsel for twenty years on a second-degree plea of guilty, but it is unclear whether this was ever communicated to petitioner.