Deborah Marie McDONALD *v.* STATE of Arkansas

CA CR 92-468                                             852 S.W.2d 833

Court of Appeals of Arkansas
En Banc
Opinion delivered May 12, 1993

*Robert T. Rogers*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y. Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was charged with murder in the second degree. After a jury trial, she was convicted of manslaughter, fined $10,000.00, and

sentenced to ten years in the Arkansas Department of Correction. Subsequently, the appellant filed a motion for a new trial pursuant to Rule 36.22 of the Arkansas Rules of Criminal Procedure, asserting ineffective assistance of counsel. The trial court overruled the motion on the grounds that the appellant had failed to show facts constituting grounds for a new trial. The appellant appealed her conviction and the denial of her motion for a new trial to this Court and, in an opinion not designated for publication delivered on May 2, 1990, we held that Arkansas Rule of Criminal Procedure 36.22 mandates that the trial judge hold a hearing on a motion for a new trial if one is requested by the convicted defendant. Because the trial court failed to conduct an evidentiary hearing, we reversed and remanded for such a hearing to be conducted. Pursuant to our mandate, the trial court held an evidentiary hearing on December 14, 1990, and on September 26, 1991, entered an order denying the appellant's motion for a new trial. From that decision, comes this appeal.

For reversal, the appellant contends that she was denied effective assistance of counsel by virtue of her trial counsel's failure to interview and subpoena witnesses; to proffer evidence objected to by the State; to submit adequate jury instructions; and failure to impeach witnesses called by the prosecution. We find no prejudicial error, and we affirm.

The standard of review applicable to claims of ineffective assistance of counsel was summarized by our Supreme Court in *Mullins* v. *State*, 303 Ark. 695, 799 S.W.2d 550 (1990):

> To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the sixth amendment. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. A court must indulge in a strong presumption that counsel's conduct falls within the wide

> range of reasonable professional assistance. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered. *Strickland* v. *Washington,* 466 U.S. 668 (1984).

*Mullins, supra,* 303 Ark. at 698-699. Therefore, the test for ineffective assistance of counsel consists of two components: deficient performance by counsel, and prejudice suffered by the defendant. The defendant is not entitled to relief unless he makes the requisite showing on both components. *See Beavers* v. *Lockhart,* 755 F.2d 657 (8th Cir. 1985).

■ Regardless of how pervasive trial counsel's errors may be, there is no presumption of prejudice in determining whether a defendant was denied effective assistance of counsel. *Rode* v. *Lockhart,* 675 F. Supp. 491 (E.D. Ark. 1987). Instead, the burden of showing prejudice rests on the party claiming ineffective assistance of counsel. *Fink* v. *Lockhart,* 823 F.2d 204 (8th Cir. 1987). The strength of the State's case against an accused is an important factor to consider in resolving the issue of prejudice. *Rode* v. *Lockhart, supra.*

We affirm because, even assuming, without deciding, that trial counsel's performance in the case at bar was deficient, the appellant has failed to show, as she must, that any deficient performance which occurred prejudiced the defense.

The appellant had been living with the victim in his home since late September 1987. She admitted that she shot and killed the victim approximately ten weeks later, on December 13, 1987. Having admitted the killing, the appellant's plea of not guilty to the charge of second degree murder was based on her defense of justification. Prior to trial, the appellant's trial attorney informed the appellant of a proposed plea bargain whereby the appellant would not be fined, would serve no prison time, and would be placed on probation for ten years in exchange for a guilty plea to manslaughter. The appellant refused this proposal, was tried

before a jury on charges of murder in the second degree, was convicted of manslaughter, fined $10,000.00, and sentenced to ten years imprisonment.

The appellant asserts that she was prejudiced by trial counsel's failure to investigate, interview, and subpoena witnesses material to her defense.

We note that ineffective assistance complaints based on counsel's failure to secure witnesses are disfavored because presentation of evidence is a matter of trial strategy. *Walker* v. *Lockhart*, 807 F.2d 136 (8th Cir. 1986). Furthermore, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston* v. *United States*, 798 F.2d 374, 376 (9th Cir. 1986).

In the case at bar, the State's case was strengthened by the fact that the appellant admitted that she shot and killed the victim. She argues that trial counsel was ineffective in failing to call several witnesses to testify in support of her theory of self-defense. Four of these witnesses could have testified to injuries the appellant sustained prior to the shooting. However, our review of the record reveals that these injuries, consisting of a knot on the head and several bruises, were relatively minor in nature. Furthermore, the appellant testified at length at trial, asserting that she was injured during beatings delivered by the victim before she shot him. In the absence of any proffered evidence to show that these injuries were severe or otherwise life threatening, we cannot say that the appellant was prejudiced by the absence of this testimony.

We reach a similar conclusion regarding the appellant's argument that she was prejudiced by her trial counsel's failure to proffer evidence of prior acts of violence by the victim directed at other persons. It is not clear from the record before us to what extent, if any, a proffer was made with regard to this evidence. Nevertheless, the appellant testified at length and in great detail concerning acts of violence by the victim towards herself and others, and her testimony clearly depicts the victim as a cruel and unbalanced man.

We think it significant that the appellant was not convicted of second degree murder as charged, but was instead

convicted of manslaughter, which is committed by one who:

> causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse.

Ark. Code Ann. § 5-10-104(a)(1) (1987). Inasmuch as the defense of justification advanced by the appellant is a defense conditioned on a reasonable belief on the part of the actor that unlawful physical force is about to be inflicted on him, *see Bargery v. State*, 37 Ark. App. 118, 825 S.W.2d 831 (1991), it appears that the jury gave credence to the appellant's testimony concerning the victim's violent acts towards her. Although the testimony proffered at the hearing on the appellant's motion for a new trial constituted additional evidence relating to the victim's character, we cannot say that this additional evidence was so different in kind or nature from that offered by the appellant at trial that trial counsel's failure to proffer it prejudiced the defense.

The appellant also argues that she was prejudiced by her counsel's failure to submit adequate jury instructions regarding the defense of justification and the lesser offense of negligent homicide. Specifically, she argues that her trial counsel failed to request an instruction informing the jury that she was under no obligation to retreat from an aggressor in her own dwelling. We find no merit in this argument because it is clear from the record that, whether or not she was under an obligation to do so, the appellant had in fact retreated prior to the shooting, and that the victim was shot in the bedroom to which she had retreated. With regard to the appellant's argument that she was prejudiced by her trial counsel's failure to submit an instruction for negligent homicide, we find no prejudice because, under the circumstances of this case, where the appellant admitted to purposely shooting the victim, we find no rational basis for a negligent homicide instruction. *See O'Roark v. State*, 298 Ark. 144, 765 S.W.2d 916 (1989).

Finally, the appellant argues that her trial counsel was ineffective in his failure to impeach two witnesses, Joe Logsdon and Officer Gary McVay. At the hearing on the appellant's motion for a new trial, the appellant's trial counsel testified that

he did not impeach Mr. Logsdon at trial because he believed that Mr. Logsdon's credibility had already been destroyed. Although it is clear from the record before us that appellant's trial counsel had an opportunity to impeach the testimony of both of these witnesses, the ultimate question of whether such impeachment would have affected the result of the trial turns heavily on the credibility of their prior testimony. We note that the appellant had testified that Mr. Logsdon had encouraged the victim in his abuse and beating of the appellant; that Mr. Logsdon and the victim had had a pact whereby Mr. Logsdon would avenge the victim if the appellant ever harmed him; and that Mr. Logsdon threatened the appellant and had to be held at gunpoint by her until the police arrived. Given this evidence, and giving due deference to the trial court's ability to assess the credibility of the witnesses, we cannot say that the result of the proceeding would have been different had these witnesses been impeached.

When we consider the arguments raised by the appellant, and the facts adduced at trial and in the motion for a new trial in light of the totality of the circumstances, including the fact that the appellant had admitted to killing the victim and that she was not convicted of second degree murder, but instead of the lesser included offense of manslaughter, we cannot say that the appellant was prejudiced by any errors which trial counsel may have committed.

Affirmed.

PITTMAN, ROBBINS, and ROGERS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. I respectfully dissent. I do not disagree with the abstract principles of law recited in the prevailing opinion. However, I cannot agree with the affirming judges' application of those principles to the facts of this case.

As noted in the prevailing opinion, appellant admittedly shot and killed Herschel Cleary, the man with whom she was living, on the evening of Sunday, December 13, 1987. She was charged with second-degree murder. She defended on grounds of justification, contending that her actions were excused because she acted in self-defense. Although it was disputed, appellant testified that she refused a ten-year suspended sentence with no fine on advice

of counsel. After a jury trial, appellant was convicted of manslaughter and sentenced to ten years in the Arkansas Department of Correction and fined $10,000.00. On appeal, she contends that she received ineffective assistance of counsel at trial. Specifically, she argues that she was prejudiced by trial counsel's (1) failure to investigate and to interview and subpoena witnesses material to her claim of self-defense; (2) failure to proffer evidence excluded by the trial court; (3) failure to submit certain jury instructions; and (4) failure to impeach two of the State's witnesses. I agree with appellant's position as to the first, second, and fourth of these arguments.

The prevailing opinion fails to discuss in any significant measure the facts underlying appellant's contentions. Therefore, at least some factual background is necessary for an understanding of the issues. Appellant contended at trial that Cleary and his friend, Joe Logsdon, had been drinking heavily all weekend. She testified that on Sunday morning Cleary became physically abusive to her. As the day went on, the abuse became progressively worse and began to be accompanied by verbal threats of what Cleary would do to her. After being shoved, punched, kicked, and knocked into walls, appellant eventually went to another room and lay down on a bed. Cleary followed her into the bedroom and started hitting her again. He said that he was going to "rip [appellant's] head off." Appellant testified that she was afraid that Cleary was going to kill her. During the struggle, appellant retrieved a pistol. She testified that she kicked him off of her, brought the gun around, and fired. She stated that Cleary then said, "You're a dead motherfucker," and lunged at her. She shot him again. Cleary later died.

Appellant's first argument is geared toward counsel's failure to interview and call as witnesses any of several medical professionals who could have testified as to the existence and extent of appellant's physical injuries. Dr. Steve Goss, who examined appellant on December 14, 1987, could have testified that appellant had several red and/or purple bruises suffered as a result of blows by a fist or other object; that she had a small hematoma, or swollen bruise, at the hairline of her forehead; and that three or four of the contusions had been suffered within twenty-four hours of his examination. Dr. T.C. Glasscock, who saw appellant on December 18, could have testified that appellant

had bruises on both breasts; that she had very discolored painful, and tender bruises on her upper arm; that the area just above her forehead was swollen; that she complained of severe headache and nausea; that she suffered an equilibrium disorder; and that her right eye did not follow finger movement. As a result of his examination, Dr. Glasscock ordered a CT scan. He would have testified that in his opinion appellant had suffered a concussion and that it was this swelling of tissue that caused appellant's dizziness and headaches. Linda Jones, appellant's sister and a registered nurse, picked up appellant from jail on December 17. Ms. Jones could have testified that appellant had bruises on her forehead, her breasts, the right side of her face, her right upper arm, and her inner arms from her wrists to her elbows. She could have further testified to appellant's complaints of dizziness and nausea and to her inability to hear from her right ear.

Appellant also contends that counsel was ineffective for failing to proffer evidence of Cleary's prior violent acts of which appellant had knowledge. During the original trial, appellant's counsel attempted to question prosecution witness Joe Logsdon, a friend of Cleary's, about an incident when Cleary pushed Michelle Bolick, who was expecting a child, from a moving vehicle. The trial court sustained the State's objection because the act had not been directed at or personally observed by appellant. Although appellant's trial counsel testified at the hearing on the motion for new trial that he did not agree with the judge's ruling and knew that appellant had knowledge of Cleary's prior acts of violence, he made no attempt at trial to take issue with the court's ruling or to proffer the excluded testimony. In addition, counsel did not question appellant about any of several such incidents about which she had knowledge, including the Bolick incident, Cleary's extremely brutal attack on Ricky Bean, or Cleary's rampage at Susie Harp's house where he pulled the telephone from the wall, kicked a bedroom door off its hinges, and struck Jamie Elliot and Tamara Murphy and chased their children. Nor did counsel, assuming he felt constrained by the court's ruling during Logsdon's testimony, make a proffer of appellant's testimony regarding these incidents. Additionally, counsel failed even to interview Bolick, Elliot, or Murphy.

To the extent that the court ruled that evidence of Cleary's prior acts of violence about which appellant had knowledge was

inadmissible, the court's ruling was erroneous. Under Ark. R. Evid. 405(b), evidence of specific instances of a person's conduct is admissible to prove a character trait that is an essential element of a defense. A victim's prior specific acts of violence directed at the defendant or that were within her knowledge are admissible as probative of what the defendant reasonably believed regarding whether unlawful force was about to be used upon her and whether the amount of force used to repel the attack was necessary. *Britt* v. *State*, 7 Ark. App. 156, 645 S.W.2d 694 (1983). It is sufficient if a defendant learns of such prior acts of violence either through her own observation or through information communicated to her by others. *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1987). By failing even to proffer the evidence, however, counsel denied appellant both the opportunity to have it examined by the trial court and, due to lack of preservation, the ability to raise the issue on direct appeal.

Appellant further asserts that counsel's performance was deficient due to his failure to impeach the testimony of Joe Logsdon or Officer Gary McVay. Logsdon, who had been present at the house shared by Cleary and appellant, gave a recorded statement on the day of the shooting in which he said that Cleary had not kicked appellant. However, later in the same statement, he admitted he had lied. Logsdon then stated that Cleary had kicked appellant in the chest and knocked her against the fireplace. On December 20, 1987, Logsdon gave another statement to the police stating that Cleary was "hitting around on her at the shoulders and head." At trial, however, Logsdon testified that Cleary had kicked and slapped at appellant "a little bit," with the implication being that any abuse had been minimal. Appellant's trial counsel wholly failed to impeach Logsdon with the two prior inconsistent statements, despite the fact that both statements had been in the prosecuting attorney's open file.

Officer Gary McVay testified at trial, without challenge, that appellant initially reported that Logsdon had shot Cleary. The State then argued in its closing argument that appellant had tried to set up Logsdon for a possible shoot-out with the sheriff's deputies so that Logsdon would be killed by the officers who arrived to investigate the homicide. In fact, the official radio log indicated that "lady advised she's shot someone and there's another man there, a friend of the victim." The radio log was

readily available to appellant's counsel, and appellant's counsel admitted that he thought that the information it contained would have been helpful to appellant's case.

There is a single overriding theme present throughout the prevailing opinion, and it is that very theme that I find troublesome. Although the affirming judges assume for the purposes of their opinion that counsel's performance was deficient, they find that appellant suffered no prejudice as a result of any of the three failures discussed in this dissent because other evidence was presented on each point. The prevailing opinion excuses the failure to call the available medical witnesses because *appellant* testified to her injuries caused by Cleary. It excuses the failure to proffer any evidence of Cleary's prior acts of violence because *appellant* testified to *one* such prior act directed at her and to his violent acts of the day of the shooting. It excuses the failure to impeach Logsdon because *appellant's* testimony contradicted Logsdon's and thereby sufficiently damaged his credibility. Contrary to the affirming judges' position, this simply is not a case involving choice of witnesses or improvident trial strategy. The *only* witness material to appellant's claim of self-defense called by her counsel was appellant herself. Although other material witnesses and/or independent evidence were available, *none* were called or presented to corroborate appellant's claim of self-defense. It simply is not enough to say that appellant testified regarding these matters. As is so often stated in cases affirming criminal convictions, juries have every right to disbelieve a defendant since she is the person most interested in the outcome of the trial.

Appellant had the right to put on a meaningful defense. An attorney who does not investigate the factual basis of his client's defense or call witnesses material to that defense can hardly be said to provide adequate and appropriate counsel. In my opinion, appellant's trial counsel was not acting as the "counsel" guaranteed by the Constitution. Furthermore, in my opinion, there is a reasonable probability that, but for counsel's errors, a different decision would have been reached. Therefore, I would reverse and remand for a new trial.

ROBBINS and ROGERS, JJ., join in this dissent.