[No. A040921. First Dist., Div. Four. Dec. 30, 1988.]

ERIC V. AXNESS, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
A. A. PIERCE, as Director, etc., Real Party in Interest.

**COUNSEL**

Larry M. Cowan for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Mary C. Michel, Robert E. Murphy and Eleanor Nisperos, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**PERLEY, J.**—Petitioner Eric V. Axness (appellant) appeals from an order denying his amended petition for writ of mandate to prevent the California Department of Motor Vehicles (department) from suspending his California driver's license based on two convictions of driving under the influence (Veh. Code, § 23152)[1] within five years. The petition challenges the suspension on the ground that the second conviction, which occurred in Minneso-

---

[1] Unless otherwise indicated, all further statutory references are to the Vehicle Code.

ta, was unconstitutional. We hold that in the circumstances of this case appellant may challenge the constitutionality of the Minnesota conviction by way of mandamus against the department, and we conclude that his petition should have been granted.

On March 5, 1984, in Walnut Creek, California, appellant was convicted of driving under the influence. (§ 23152, subd. (b).) On August 8, 1986, in Saint Cloud, Minnesota, appellant was convicted of driving while intoxicated. Upon being notified of the Minnesota conviction, the department served its order dated September 16, 1986, suspending appellant's California driver's license for a period of eighteen months based on the occurrence of the two convictions within a five-year period. (§§ 13352, subd. (a)(3); 13352, subd. (d); 23165.)

Appellant filed a petition for writ of mandate against the department within 90 days of notice of the order of suspension. (§ 14401, subd. (a).) The petition alleged that the procedures leading to appellant's Minnesota conviction violated his constitutional rights. ■■ ■■■■ The department demurred inter alia based on the failure of the petition to allege that appellant had challenged the Minnesota conviction in that state, and the trial court sustained the demurrer with leave to amend "to see what [appellant] could do in Minnesota . . . ."[2] Appellant then filed an amended petition for writ of mandate reflecting his initiation of proceedings in Minnesota to vacate the second conviction. Appellant's motion to vacate was rejected by the Minnesota court, and was followed by denial of his amended petition herein.

■■ ■■■■ The department argued below that it is not subject to mandamus because it has neither the duty nor the power to invalidate a judgment of conviction, and that the Minnesota conviction was not obtained in violation of appellant's constitutional rights.[3] The record does

---

[2] The trial court apparently relied in this regard on *Cook* v. *Department of Motor Vehicles* (1973) 33 Cal.App.3d 265, 276 [109 Cal.Rptr. 104]. *Cook* interprets *Thomas* v. *Department of Motor Vehicles,* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858] to preclude mandamus against the department unless the driver has first challenged the constitutionality of an out-of-state conviction in the rendering jurisdiction. The majority opinion in *Thomas,* however, did not address out-of-state convictions and we would decline to follow *Cook* in appellant's situation. Since appellant is entitled to challenge the constitutionality of his Minnesota conviction in California even if that conviction has been upheld in Minnesota (see *People* v. *Coffey,* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15]), we do not regard his out-of-state challenge as a prerequisite to the relief sought in this case.

[3] The department also suggests that California is bound to give "full faith and credit" to the Minnesota judgment. However, since the full faith and credit clause of the federal Constitution does not require sister states to enforce a foreign penal judgment, California is free to consider what effect, if any, it will give to the Minnesota conviction in terms of appellant's

not disclose which of these contentions was persuasive to the trial court and we examine each in turn.

A series of cases indicate that the validity of a section 23152 conviction may not be challenged in a mandate proceeding against the department. (*Thomas* v. *Department of Motor Vehicles, supra,* 3 Cal.3d 335, 338; *Fitch* v. *Justice Court* (1972) 24 Cal.App.3d 492, 495 [101 Cal.Rptr. 227]; *Houlihan* v. *Department of Motor Vehicles* (1970) 3 Cal.App.3d 915, 919-920 [83 Cal.Rptr. 885]; *Williams* v. *Department of Motor Vehicles* (1969) 2 Cal.App.3d 949, 952-954 [83 Cal.Rptr. 76].) These cases observe that the department is required by law to suspend the license of a driver with multiple convictions, and reason that a writ of mandate cannot issue to prevent the department from performing this legal duty. (*Thomas, supra,* at p. 338; *Fitch* v. *Justice Court, supra,* at p. 495; *Houlihan* v. *Department of Motor Vehicles, supra,* at p. 918; *Williams* v. *Department of Motor Vehicles, supra,* at p. 953.) These decisions also note that the department lacks the judicial power to nullify a conviction. (*Fitch, supra,* at p. 495; *Houlihan, supra,* at p. 919; *Williams, supra,* at pp. 953-954.) They suggest that mandamus would only lie to prevent the department from acting on a conviction that was "void on its face." (*Houlihan, supra,* at p. 919, fn. 4; *Williams, supra,* at p. 954.) Otherwise, mandamus must be directed against the court that rendered the conviction. (*Thomas, supra,* at p. 338; *Fitch, supra,* at p. 495; *Houlihan, supra,* at p. 919; *Williams, supra,* at p. 952.) Since the Minnesota conviction is not void on its face, the department contends that it may not be challenged by way of appellant's petition.

However, none of the foregoing cases involved an out-of-state conviction, and the situation in this case is distinguishable because mandamus against the rendering court is unavailable in California. ■ A California court does not have the power to direct the Minnesota court to set aside its judgment. (See *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 526 [145 Cal.Rptr. 636]; *Gonzalez* v. *Municipal Court* (1973) 32 Cal.App.3d 706, 712-713, fn. 11 [108 Cal.Rptr. 612].) *Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d at page 268, indicates that the department may be subject to mandamus if a foreign conviction has been set aside in the rendering jurisdiction, but we are aware of no case that has considered whether this remedy is available when an out-of-state challenge has not succeeded.

We agree with appellant that before the department may suspend his California driving privileges on the basis of an out-of-state conviction he

---

California driver's license. (*Nelson* v. *George* (1970) 399 U.S. 224, 229 [26 L.Ed.2d 578, 582-583, 90 S.Ct. 1963].)

must be allowed to challenge the constitutionality of that conviction in a California court. ▉ "[T]o the extent that statutory machinery relating to penal status or severity of sanction is activated by the presence of prior convictions, it is imperative that the constitutional basis of such convictions be examined if challenged by proper allegations. [Citations.] The fact that a prior conviction was sustained in another jurisdiction does not preclude such examination. 'To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions.' " (*People* v. *Coffey, supra,* 67 Cal.2d 204, 214-215.) Suspension of a driver's license is a "sanction" within the meaning of this passage from *People* v. *Coffey.* (*Ganyo* v. *Municipal Court, supra,* 80 Cal.App.3d at pp. 525-526; *Mitchell* v. *Orr* (1969) 268 Cal.App.2d 813, 817 [74 Cal.Rptr. 407].)

▉ "Since the sanctions which may be imposed upon a person convicted of drunk driving are increased if he has a prior conviction of the same offense within a specified period of time, a collateral attack may be made on any such prior conviction on constitutional grounds." (*Hasson* v. *Cozens* (1970) 1 Cal.3d 576, 579 [463 P.2d 385]; cf. *Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 381 [211 Cal.Rptr. 748, 696 P.2d 141] ["Of course, a driver who wishes to challenge the existence or validity of a prior conviction must be afforded an opportunity to do so"].) There is no basis for distinguishing between California and out-of-state convictions under this language. Therefore, if appellant had first been convicted in Minnesota, he would have had the opportunity to collaterally attack the constitutionality of that conviction in the subsequent California proceeding. ▉ ▉ ▉ ▉ To deny appellant that same opportunity in this case would make access to the California courts for those in his position dependent upon the order of their convictions.[4] We note also that the statute providing for no more than one collateral attack on the constitutionality of a section 23152 conviction evidently refers to a challenge in a California court. (See § 23209, which directs the court to report its determination to the department.)

In appellant's circumstances, such a challenge may be raised in the context of a petition for writ of mandate against the department, even though the department is under no duty to scrutinize the constitutionality of section 23152 convictions. Code of Civil Procedure section 1085 authorizes mandamus both to compel the performance of duties and to insure the

---

[4] Although *People* v. *Coffey* and *Hasson* v. *Cozens* speak only in terms of "prior" convictions, the principle that a penal sanction or a driver's license suspension may not be imposed on the basis of an unconstitutional conviction applies equally to all convictions.

enjoyment of rights,[5] and appellant has the right not to be sanctioned on the basis of an unconstitutional conviction. Moreover, a writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)[6]

We do not mean to suggest that a driver in appellant's situation is to be afforded a trial de novo on an out-of-state conviction, or that questions such as the sufficiency of the evidence supporting such a conviction may be relitigated in a mandate proceeding against the department. ■ We hold only that mandamus is available to challenge the constitutionality of an out-of-state conviction if the conviction will result in the suspension of a California driver's license, and the driver is otherwise without a forum in California in which to raise such a challenge because his latest conviction occurred in another jurisdiction.

We use the term "constitutionality" to refer to federal constitutional rights. Drivers on the highways of other states are subject, of course, to the laws of those states, and they may be convicted for violating those laws in accordance with local procedures. Since they cannot invoke the Constitution or laws of California to avoid convictions in other jurisdictions, they cannot avoid the sanctions resulting from such convictions by appealing to California law. But a driver who leaves California does not leave behind his federal constitutional rights. (Cf. *Sterling* v. *Constantin* (1932) 287 U.S. 378, 398 [77 L.Ed. 375, 385, 53 S.Ct. 190] [there is no "avenue of escape from the paramount authority of the Federal Constitution"].) Although we are bound to follow the decisions of the United States Supreme Court on matters of federal constitutional law (see generally 9 Witkin, Cal. Procedure (1985) Appeal, § 779, pp. 750-751 and cases cited), we may be guided by California cases interpreting those decisions and we need not defer to out-of-state precedents in this regard (*id.* at § 778, pp. 749-750).

The applicable burden and standard of proof must also be addressed before proceeding to the merits of appellant's constitutional arguments. The statute indicating that the prosecution must prove the constitutionality of a prior section 23152 conviction beyond a reasonable doubt applies only in a

---

[5] Code of Civil Procedure section 1085 states in pertinent part that a writ of mandate ". . . may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

[6] Although it would appear that appellant could have filed an action for declaratory relief (see generally 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 800 et seq.) we are aware of no precedent for such an action, and the existence of an equitable remedy of doubtful efficacy does not bar the right to a writ of mandate. (*Hershey* v. *Reclamation District* (1912) 162 Cal. 401, 403 [122 P. 1074].)

pending criminal action. (§ 41403, subd. (b); see *Gonzalez* v. *Municipal Court, supra,* 32 Cal.App.3d 706, 710-711, fn. 5.) The appropriate evidentiary rules in this case are those ordinarily applied in the context of administrative mandamus. "The burden of proof rests upon the petitioner for writ of mandate to make a showing sufficient to establish administrative error." (*Campbell* v. *Board of Dental Examiners* (1971) 17 Cal.App.3d 872, 876 [95 Cal.Rptr. 351]; see also Evid. Code, § 664.) If appellant's license had been suspended after an administrative hearing, he would have been required to demonstrate his entitlement to a writ by a preponderance of the evidence. (See *Ettinger* v. *Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 858 [185 Cal.Rptr. 601].) There is no reason to apply a different standard in this case. ■ Accordingly, to prevail on his petition, appellant must prove by a preponderance of the evidence that the Minnesota conviction was obtained in violation of his constitutional rights.

■ Appellant presented the record of the Minnesota proceedings in support of his amended petition. The record indicates that appellant was not represented by counsel and that his conviction was based on a guilty plea. A plea of guilty cannot be accepted unless it is preceded by an express waiver of the defendant's constitutional right to confront his accusers. (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 243 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709]; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 301-302 [110 Cal.Rptr. 329, 515 P.2d 273]; *In re Tahl* (1969) 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449].)[7] Such a waiver will not be presumed from a silent record (*Boykin* v. *Alabama, supra,* at p. 243 [23 L.Ed.2d at pp. 279-280]), and the record in Minnesota is silent with respect to any such waiver. Appellant signed a form stating "I understand I have . . . [t]he right to confront and cross-examine all witnesses," but there is no indication that he ever waived that right. The findings of fact made by the Minnesota court on appellant's motion to vacate the conviction do not indicate otherwise, and we are not bound to follow a Minnesota precedent suggesting that a waiver may be inferred solely from an acknowledgement of rights followed by a guilty plea.[8] In the absence of a waiver of appellant's right to confrontation,

---

[7] The authorities cited by the dissent do not convince us that the California Supreme Court misinterpreted *Boykin* in *Tahl* and its progeny.

[8] The findings of fact were as follows: "1. The Defendant, Eric V. Axness, entered a guilty plea to the offense of Driving Under the Influence of Alcohol on August 8, 1986 for an incident occurring the same day. [¶] 2. Prior to appearing in court, the Defendant completed and signed an acknowledgment of rights form. On paragraph 5.d., the Defendant acknowledged that he understood he had the right to confront and cross-examine all witnesses. [¶] 3. At his court appearance, the Defendant was advised of a number of constitutional rights. He waived these rights on the record. [¶] 4. The Defendant was not specifically advised of his right to confront and cross-examine all witnesses by the court at the time of his court appearance. [¶] 5. The Defendant was not advised of the effect his license revocation and DWI conviction

we cannot regard his guilty plea in Minnesota to have been intelligent and voluntary (*Boykin* v. *Alabama, supra,* 395 U.S. at p. 244 [23 L.Ed.2d at p. 280]), and his California license may not be suspended because of a conviction on that plea (*Mitchell* v. *Orr, supra,* 268 Cal.App.2d at p. 817).[9]

The order denying the petition is reversed, and the trial court is directed to issue a writ of mandate commanding the department to rescind its order suspending appellant's driver's license.

Poché, J., concurred.

**ANDERSON, P. J.,** Concurring and Dissenting.—I concur in my colleagues' opinion insofar as it recognizes appellant's right to challenge the constitutionality of the Minnesota conviction by mandamus against the department in a California court. I respectfully dissent from that portion of the opinion which holds the Minnesota conviction invalid and reverses the trial court's denial of the petition. I quite agree with the majority that a driver who leaves California does not leave behind his federal constitutional rights, and I further agree that in testing the constitutionality of out-of-state convictions we refer to federal constitutional rights and are governed by the United States Supreme Court decisions interpreting these rights. I respectfully part company with my colleagues, however, when they hold that applying such federal authority, appellant has proven by a preponderance of the evidence that his Minnesota conviction was obtained in violation of those rights. In effect the majority holds that unless the record expressly reflects a specific waiver of appellant's right to confront his accusers, federal law deems that his plea of guilty is not intelligent and voluntary, citing *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709].

But *Boykin* does not so hold. *Boykin* recited the major three constitutional rights that the accused waives by his plea of guilty and held that the waiver of these rights cannot be presumed from a silent record;[1] the "silent

---

would have on any interstate communications regarding the status of his driver's license in other states and specifically the Defendant's home state of California."

The precedent cited by the Minnesota court for its finding that a waiver of the right of confrontation occurred on the foregoing facts is *State* v. *Rau* (Minn.App. 1985) 367 N.W.2d 613.

[9] We need not resolve appellant's other contention that the plea was involuntary because he was not advised that Minnesota would inform other states of his conviction, and that such advice might adversely affect his driving privileges in the other states.

[1] "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. [Citation.] Second, is the right to trial by jury. [Citation.] Third, is the right to confront one's accusers. [Citation.] We cannot presume a waiver of these three important federal rights from a silent record." (*Boykin* v. *Alabama, supra,* at p. 243 [23 L.Ed.2d at pp. 279-280]; fn. omitted.)

record" therein revealed that "the judge asked no question of petitioner concerning his plea,[2] and petitioner did not address the court."[3] Moreover, *Boykin* did not prescribe any procedure as to how the defendant's constitutional rights must be waived; instead it indicated only that the waiver of rights must appear in some way in the record. As our California Supreme Court observed in *In re Tahl* (1969) 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449]: "The quoted language [in *Boykin*], while not establishing precise guidelines, makes clear that a plea of guilty cannot stand unless the record *in some manner* indicates a free and intelligent waiver of the three enumerated rights necessarily abandoned by a guilty plea and an understanding of the nature and consequences of the plea." (Italics added.) It follows that a strict requirement that in a guilty plea procedure each of the three constitutional rights must be specifically enumerated and the specific waiver of each must appear upon the face of the record is not a federal constitutional requisite; it is only one interpretation of *Boykin* made by some state courts, including California. That contrary interpretations are reasonable was even conceded in *In re Tahl* itself: "There are at least two plausible interpretations of *Boykin*. First, it may be sufficient that there are statements and facts in the record from which a reasonable presumption could be drawn that a defendant has been apprised of and has voluntarily waived his rights, and has intelligently pleaded guilty. . . . [¶] [T]he second possible interpretation of *Boykin*: that each of the three rights mentioned— self incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea. . . ." (*Id.,* at pp. 130-132.)

While California and many other states adopted the second stringent test, it is clear that such rigid interpretation of *Boykin* is neither required nor followed by the United States Supreme Court and the federal cases. Under the latter authorities, which control the present case, the specific articulation of *Boykin* rights is not necessary as long as the record reflects that the guilty plea was entered by the accused understandingly and voluntarily.[4] The examples illustrating this point are numerous.

Thus, in *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463], the United States Supreme Court, citing *Boykin,* upheld a guilty plea as voluntary and intelligent even though the defendant had not

---

[2] To a capital crime.

[3] *Boykin* v. *Alabama, supra,* 395 U.S. at page 239 [23 L.Ed.2d at p. 277].

[4] "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was *intelligent* and *voluntary*." (*Boykin* v. *Alabama, supra,* 395 U.S. at p. 242 [23 L.Ed.2d at p. 279], italics added.) "[T]here was reversible error 'because the record does not disclose that the defendant *voluntarily* and *understandingly* entered his plea of guilty.' " (*Id.,* at p. 244 [23 L.Ed.2d at p. 280], italics added.)

been specifically advised of the three rights discussed in *Boykin*. In clarifying *Boykin* the court stated: "The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. . . . The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea *understandingly and voluntarily*." (*Id.,* at p. 748, fn. 4 [25 L.Ed.2d at p. 756], italics added.)

In *North Carolina* v. *Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160], the United States Supreme Court reaffirmed its position that *Boykin* merely required that the plea be voluntary, knowing and intelligent, and underlined that neither *Boykin* nor due process requires a listing (and for that matter an explicit waiver) of the defendant's constitutional rights. As the court remarked: "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (*Id.,* at p. 31 [27 L.Ed.2d at p. 168].)

The federal cases are in accord with the principles set out above. For example, in *Wilkins* v. *Erickson* (9th Cir. 1974) 505 F.2d 761, the defendant launched a collateral attack against his conviction by contending that the guilty plea was invalid because he was neither advised nor did he waive his constitutional rights enumerated in *Boykin*. The Ninth Circuit rejected defendant's contention and relying primarily on *Brady* and *Alford* held that *Boykin* does not require specific articulation of the three constitutional rights in a state proceeding. (*Id.,* at p. 763.) And most recently, in *Gonzales* v. *Grammer* (8th Cir. 1988) 848 F.2d 894, the defendant sought to set aside his guilty plea on similar grounds. In reply, State of Nebraska contended that the plea was not vulnerable to attack for a failure to enumerate the defendant's rights because the Nebraska state law did not require an express articulation of *Boykin* rights prior to entry of a guilty plea. While the court held that under the circumstances of the case the waiver was invalid, it agreed with the state by pointing out that under *Brady, Alford,* and a great number of federal cases, a line-by-line recitation of constitutional rights at a plea proceeding is not required by *Boykin* or due process and that the main test of the validity of the plea is whether the plea was voluntary, knowing and intelligent. (*Id.,* at pp. 897-898.) Finally, in *Stacey* v. *Solem* (8th Cir. 1986) 801 F.2d 1048, the defendant complained that his guilty plea was legally ineffective because (a) the trial court failed to apprise him that by accepting the plea he waived his privilege against self-incrimination and his right to confront witnesses, and (b) he failed to specifically tell the court that he understood his rights and waived them. The reviewing court disagreed in emphasizing that " '*Boykin* does not require the express articulation and waiver of these three rights at the time the plea is entered,' " citing *Todd* v. *Lockhart* (8th Cir. 1974) 490 F.2d 626, 628, footnote 1, and that

" 'there is no constitutional requirement that the trial court employ a particular litany to validate the guilty plea.' " (Citing *Rouse* v. *Foster* (8th Cir. 1982) 672 F.2d 649, 651; *Stacey* v. *Solem, supra,* 801 F.2d at p. 1050.) Consistent therewith, the court applied the *Brady-Alford* standard and held that the plea remained valid because the evidence established that the defendant was adequately informed of his rights and the totality of the circumstances showed a voluntary and intelligent waiver on his part.

Pursuant to such applicable federal authority, the Minnesota court herein was well justified in sustaining the validity of the Minnesota conviction based upon appellant's guilty plea. The court's findings show that prior to the entry of the guilty plea appellant completed and signed an acknowledgement of rights form in Minnesota. (Maj. opn., *ante,* at p. 1497, fn. 8.) As explained in *State* v. *Rau* (Minn.Ct.App. 1985) 367 N.W.2d 613, 616, the acknowledgement of rights form advises the defendant, among others, of the privilege against self-incrimination, the right to confront witnesses, and the right to jury trial. By signing the form appellant thus acknowledged that he had been made aware of the rights he waived by entering his guilty plea. The court findings further indicate that at his court appearance, prior to entry of the formal plea, appellant was further advised of a number of constitutional rights and voluntarily waived them. (Maj. opn., *ante,* at p. 1497, fn. 8.) Since this record clearly demonstrates that appellant's plea was voluntary and intelligent, the plea must be upheld under applicable federal law, even if appellant was not specifically advised of and did not expressly waive his right to confront witnesses at the time of his court appearance. Therefore, I would affirm the order denying the petition.

The petition of real party in interest Department of Motor Vehicles for review by the Supreme Court was denied March 16, 1989. Mosk, J., was of the opinion that the petition should be granted.