[No. A046011. First Dist., Div. Two. May 14, 1991.]

JOHN MICHAEL GASTON, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard M. Frank, Cathy A. Neff and Patricia C. Esgrow, Deputy Attorneys General, and Alan Mateer for Defendant and Appellant.

Larry M. Cowan for Plaintiff and Respondent.

**OPINION**

**BENSON, J.**—The Department of Motor Vehicles (department) appeals from a judgment of the Contra Costa County Superior Court granting a writ of mandate directing the department to set aside an order suspending the driving privilege of John Michael Gaston for 18 months. We shall reverse the judgment issuing the writ and vacate the writ.

## Factual and Procedural Background

On February 28, 1984, Gaston pled guilty to and was convicted of driving while intoxicated by the Paradise Valley Magistrate Court, Maricopa County, Arizona. As a result, by letter dated July 9, 1984, Gaston was informed his California driver's license was suspended by the department for six months pursuant to Vehicle Code section 13352, subdivision (a)(1).[1] On July 27, 1984, the department informed Gaston the suspension of his license had been set aside under section 13551[2] and that he could keep his license. The suspension was set aside apparently because Gaston had been granted probation by the Arizona court. (See Veh. Code, § 13352, subd. (a)(1).)

On November 3, 1988, Gaston was again convicted for driving under the influence of alcohol, this time by the Walnut Creek-Danville, California Municipal Court. Gaston's prior Arizona conviction was not charged as an enhancement in the subsequent California prosecution. Gaston did not challenge the validity of the Arizona prior in the California proceedings.

Gaston's driver's license was then ordered suspended by the department for 18 months on December 19, 1988. Sections 13352, subdivision (a)(3), and 23165[3] make such a suspension mandatory where a person suffers two drunk driving convictions in seven years.

---

[1] Unless otherwise indicated, all further statutory references are to the Vehicle Code. Section 13352 provides in pertinent part:

"(a) The department shall immediately suspend or revoke, . . . the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 . . . . For purposes of this section, suspension or revocation shall be as follows:

"(1) Upon a conviction or finding of a violation of Section 23152 punishable under Section 23160 [first offense under Section 23152], the privilege shall be suspended for a period of six months if the court orders the department to suspend the privilege, or if the court does not grant probation . . . .

"(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23165 [second offense under Section 23152], the privilege shall be suspended for 18 months. . . ."

[2] Section 13551 provides in relevant part that: "(b) The department shall return the license to the licensee, or may grant him a new one whenever the department determines that the grounds for suspension, revocation, or cancellation did not exist at the time such action was taken."

[3] Section 23165 provides that: "If any person is convicted of a violation of Section 23152 and the offense occurred within seven years of a separate violation of Section 23103 . . . , 23152, or 23153, which resulted in a conviction, that person shall be punished by imprisonment in the county jail for not less than 90 days nor more than one year and by a fine of not less than three hundred ninety dollars ($390) nor more than one thousand dollars ($1,000). The person's privilege to operate a motor vehicle shall be suspended by the Department of Motor Vehicles pursuant to paragraph (3) of subdivision (a) of Section 13352."

On February 21, 1989, Gaston brought this action to review the department's suspension of his driving privilege. The trial court allowed Gaston to collaterally attack his 1984 Arizona conviction by petition for writ of mandate under Code of Civil Procedure section 1085[4] which named the department as respondent. The trial court then found the Arizona conviction was unconstitutional under the *Boykin/Tahl* standard for review of convictions obtained by guilty plea. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) Granting the petition for writ of mandate, the trial court ordered the department to set aside its suspension order and to refrain from using the 1984 Arizona conviction "for any administrative or judicial purpose and to remove it from their records."

## DISCUSSION

■ The department asserts the trial court erred in ruling that mandate lies against the department to determine the validity of an out-of-state driving conviction. It also challenges the trial court's finding that Gaston's prior Arizona conviction was unlawful for failure to obtain *Boykin/Tahl* waivers of rights.

■ Under our standard of review for traditional mandate, "[j]udicial intervention is warranted when a public entity adopts a rule or makes a policy decision of general application which is shown to be arbitrary, capricious, contrary to public policy, unlawful, or procedurally unfair. Whether the action is tainted by one or more of these factors is a question of law. With respect to these questions the trial and appellate courts perform essentially the same function, and the determinations of the trial court are not conclusive on appeal." (*Personnel Com.* v. *Board of Education* (1990) 223 Cal.App.3d 1463, 1466 [273 Cal.Rptr. 288].)

■ The department argues the trial court erred in following the reasoning in *Axness* v. *Superior Court* (1988) 206 Cal.App.3d 1489 [255 Cal.Rptr. 896], review denied March 16, 1989, an opinion of Division Four of this court, which the department argues was wrongly decided. Instead, the department urges us to follow the decisions in *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858] and *Cook* v. *Department of Motor Vehicles* (1973) 33 Cal.App.3d 265 [109 Cal.Rptr. 104].

---

[4]Code of Civil Procedure section 1085 reads in pertinent part that a writ of mandate "may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

In *Thomas* v. *Department of Motor Vehicles, supra*, 3 Cal.3d 335, the court held Thomas could not bring a mandate proceeding against the department to have his prior drunk driving conviction declared invalid since the department had no duty to pass on the validity of such convictions. Thomas had two convictions for drunk driving, one in 1966 and one in 1968, both in the Municipal Court of the Los Angeles Judicial District. The court held Thomas could have attacked his 1966 conviction in the 1968 proceeding against him because the 1966 proceeding served as a "basis to increase the sanctions against him." The court also held that since the attack on the 1966 conviction was upon constitutional grounds, Thomas could seek to have the rendering court set the conviction aside at any time. (*Id.* at p. 338.)

Among the cases relied on by *Thomas* was *Houlihan* v. *Department of Motor Vehicles* (1970) 3 Cal.App.3d 915 [83 Cal.Rptr. 885]. In *Houlihan*, Division One of this court held a petition for writ of mandate could not be brought against the department to compel it to vacate a license suspension because such suspension was mandatory and the department had no legal duty to determine the validity of a drunk driving conviction. The court also held a driver had the right to have the constitutionality of his prior conviction determined in the municipal court trying him for the most recent drunk driving offense. (*Id.* at p. 918.)

After the Supreme Court decided *Thomas*, the Court of Appeal for the Fourth District issued its opinion in *Cook* v. *Department of Motor Vehicles, supra*, 33 Cal.App.3d 265. Cook's license was suspended because he suffered a drunk driving conviction in Arizona and a second conviction in Florida. Cook, a Californian, argued he should be allowed to bring a mandate action against the department to challenge his out-of-state convictions because it was a denial of due process to deny him a California forum in which to raise these issues. *Cook* followed *Thomas*, reasoning that the fact Cook's convictions were out-of-state "does not obviate the *Thomas* holding" that "mandate does not lie against the department for the purpose of determining the validity of prior convictions as that agency is not empowered to make such a judicial determination." (*Id.* at p. 267.) *Cook* found the due process argument unmeritorious since Cook admitted he could challenge his convictions in the rendering courts. (*Id.* at p. 268.) Among the cases relied on by *Cook* is *Fitch* v. *Justice Court* (1972) 24 Cal.App.3d 492 [101 Cal.Rptr. 227], another opinion of Division One of this court which held a petition for writ of mandate was unavailable against the department to challenge a prior conviction on constitutional grounds.

Gaston, however, urges us to follow *Axness* v. *Superior Court, supra*, 206 Cal.App.3d 1499, rather than the cases that preceded it. In *Axness*, the driver

was first convicted of drunk driving in California and later suffered a second conviction in Minnesota. The court allowed Axness to challenge the constitutionality of his Minnesota conviction in mandate proceedings against the department under Code of Civil Procedure section 1085. The court distinguished *Thomas, Fitch, Houlihan,* and *Williams* v. *Department of Motor Vehicles* (1969) 2 Cal.App.3d 949 [83 Cal.Rptr. 76], on the grounds they all involved only California convictions. The *Axness* court reasoned the driver was entitled to challenge the constitutionality of his Minnesota conviction in a California court since California was using the Minnesota conviction to sanction the driver. (*Axness* v. *Superior Court, supra,* 206 Cal.App.3d at pp. 1494-1495.) *Axness* thus created a limited exception to the rule that mandate proceedings cannot be brought against the department, holding that "mandamus is available to challenge the constitutionality of an out-of-state conviction if the conviction will result in the suspension of a California driver's license, and the driver is otherwise without a forum in California in which to raise such a challenge because his latest conviction occurred in another jurisdiction." (*Id.* at p. 1496.)

Gaston asks us to apply the *Axness* exception in this case. While we have serious questions regarding the soundness of the *Axness* decision (which invokes Code of Civ. Proc., § 1085 to mandate the department to perform a duty which does not exist) we need not address that problem since this case is factually distinguishable from *Axness*. In *Axness*, the first conviction was in California and the second conviction in Minnesota. Thus, Axness had no California forum to challenge the Minnesota conviction. Here, on the other hand, Gaston's first conviction was in Arizona and his second conviction was in California. Gaston claims he is in the same position as Axness because the department did not plead his Arizona conviction in the California proceeding. However, Gaston is incorrect that he did not have a California forum. As the *Axness* court pointed out, "if appellant had first been convicted in Minnesota, he would have had the opportunity to collaterally attack the constitutionality of that conviction in the subsequent California proceeding." (*Axness* v. *Superior Court, supra,* 206 Cal.App.3d at p. 1495.)

Gaston's opportunity to challenge the prior conviction existed regardless of whether it was charged. In *Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367 [211 Cal.Rptr. 748, 696 P.2d 141] our Supreme Court held the department need not plead the prior in the second action but that "a driver who wishes to challenge the existence or validity of a prior conviction must be afforded an opportunity to do so." (*Id.* at p. 381.)

The manner of challenging the validity of uncharged priors was specifically addressed in *Stenback* v. *Municipal Court* (1969) 272 Cal.App.2d 27 [76 Cal.Rptr. 917]. In *Stenback,* Division Four of this court explained

that,"under conventional procedure appellants will be able to test the priors even though they were not charged. Consistent with the court's duty under Vehicle Code section 13209 to obtain the departmental record before pronouncing judgment, a challenge to the validity of a prior conviction . . . may be offered at the arraignment for judgment; the defendant must then be asked 'whether he has any legal cause to show why judgment should not be pronounced against him.' (Pen. Code, § 1200.) . . . At this point the defendant's prior convictions, even if not pleaded, will be before the trial judge. In reply to the question whether defendant can show legal cause why judgment should not be pronounced he can raise the question of the prior conviction's validity. As with a motion for a new trial or a motion in arrest of judgment, the trial court may then set a hearing to determine the validity of the prior . . . ." (*Id.* at pp. 30-31.)

Assuming there is a right to a California forum in which to test the constitutionality of his Arizona conviction (*Axness* v. *Superior Court, supra,* 206 Cal.App.3d at pp. 1495-1496; but see *Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d at p. 268 [due process satisfied by defendant's access to rendering, out-of-state courts, even though no available California forum]), Gaston could have, but chose not to, challenge the Arizona conviction in the California prosecution. Having had a California forum, Gaston cannot fit himself within the *Axness* exception.

Relying on *Municipal Court* v. *Superior Court* (1988) 199 Cal.App.3d 19 [244 Cal.Rptr. 591], Gaston argues that requiring him to have raised the validity of the uncharged prior conviction in the California proceedings would violate his constitutional privilege against self-incrimination. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) *Municipal Court* is, however, clearly distinguishable. In that case, defendants who wished to plead guilty to drunk driving were compelled by the court to complete a form asking, among other things, whether they had any other drunk driving convictions during the last seven years. (199 Cal.App.3d at pp. 22-23.) The court of appeal held the trial court could not compel the defendant to divulge incriminating information about uncharged priors in order to plead guilty. (*Id.* at pp. 28-29.)

Here, however, Gaston was not compelled to disclose the existence of uncharged priors but had a choice of doing so either in the California proceeding or in the rendering court in Arizona. Most importantly, had Gaston opted to test the prior in the California prosecution, he would not have incriminated himself. "Prior convictions, whether charged or not, must be considered by the court in determining the conditions of probation" in a drunk driving case. (*Municipal Court* v. *Superior Court, supra,* 199 Cal.App.3d at p. 28; 39 Ops.Cal.Atty.Gen. 13, 15 (1961).) Accordingly, "[b]efore sentencing a person upon a conviction of a violation of Section

23152 or 23153, the court shall obtain from the department [of motor vehicles] a record of any prior convictions of that person for traffic violations. . . ." (§ 13209.) Here, Gaston knew the department record obtained before sentencing by the California trial judge reflected the Arizona conviction, because the department had relied upon it four years earlier to temporarily suspend his driving privilege. Thus, had Gaston raised the validity of the Arizona conviction he would merely have disclosed information already before the trial court. Such information thus could not tend to incriminate Gaston.

The facts in this case are nearly identical to those in *Romo v. Department of Motor Vehicles* (1991) 229 Cal.App.3d 251 [280 Cal.Rptr. 33]. In *Romo*, the driver suffered a drunk driving conviction in Virginia followed by two more convictions in California, after which the department suspended his driver's license under section 13352. The prior Virginia conviction was not charged in the California proceedings. The driver then filed a petition for writ of mandate against the department seeking to set aside the suspension on the grounds the Virginia conviction was constitutionally tainted by *Boykin/Tahl* error. (*Id.* at pp. 252-253.) Distinguishing *Axness v. Superior Court, supra,* 206 Cal.App.3d 1489, the *Romo* court held the driver could not challenge the constitutionality of the Virginia conviction by way of administrative mandamus against the department. As here, the court reasoned that the driver had the opportunity to challenge the out-of-state conviction in both the California and Virginia proceedings, even though the prior was uncharged in California. Also as in the present case, the driver knew his department record reflected the prior convictions since his license had previously been suspended based on those convictions. (229 Cal.App.3d at p. 257.)]

We conclude Gaston cannot bring a petition for writ of mandate under Code of Civil Procedure section 1085 naming the department as respondent. The department has no duty to determine the validity of his Arizona conviction for drunk driving. We do not, therefore, reach the validity of the Arizona conviction.

## DISPOSITION

The judgment of the trial court issuing a peremptory writ of mandate is reversed. The peremptory writ directed to the department is vacated. The

matter is remanded to the trial court with directions to enter a judgment denying the petition for writ of mandate.

Smith, Acting P. J., and Peterson, J., concurred.

A petition for a rehearing was denied June 10, 1991, and respondent's petition for review by the Supreme Court was denied July 31, 1991.