[No. B059049. Second Dist., Div. One. Feb. 2, 1993.]

ROBIN L. MOOMJIAN, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Martin H. Milas, Deputy Attorneys General, for Defendant and Appellant.

Dennis A. Fischer and Alan S. Yockelson for Plaintiff and Respondent.

## OPINION

**ORTEGA, Acting P. J.—**

### INTRODUCTION

Respondent Robin L. Moomjian, a Georgia resident, was convicted in Georgia of two driving under the influence of alcohol (DUI) offenses more than five years apart. Georgia treats DUI offenses more than five years apart as first offenses, and first offenders' licenses remain valid if they complete a basic drinking driver program. Because Moomjian completed such programs, her Georgia driver's license remained valid.

Less than seven years after her first offense, Moomjian moved to California and applied for and received a California driver's license from the appellant California Department of Motor Vehicles (DMV). A few months later, after discovering Moomjian's Georgia DUI convictions, the DMV

suspended her driver's license under authority of Vehicle Code section 13352, subdivision (a)(3), which mandates license suspension for drivers convicted of two DUI offenses within seven years.[1]

Moomjian petitioned for a writ of mandamus, arguing that had her convictions occurred in California, she could have sought probation from a California court under conditions permitting her license to be restricted rather than suspended. Moomjian argued that section 13363, subdivision (a), which gives the DMV discretion to suspend licenses based on out-of-state convictions, gave it discretion whether to suspend her license based on her Georgia DUI convictions. The trial court agreed, entered judgment for Moomjian, stayed her license suspension, and issued the writ, ordering the DMV to conduct a hearing to determine whether her license should be suspended.

The DMV properly appeals. (Code Civ. Proc., §§ 904.1, subd. (a), 1064, 1110; *Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 104 [144 Cal.Rptr. 701]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 208, pp. 834-835.) We agree with the DMV that Moomjian could have her license restricted rather than suspended only if placed on probation, and that only a court, not the DMV, can do so. Moomjian could have sought an appropriate probationary sentence from the Georgia court. Moreover, because Moomjian's DUI convictions caused her suspension, section 13363, subdivision (a), which gives the DMV discretion to suspend licenses based on out-of-state convictions, gives way to section 13352, subdivision (a)(3), which mandates license suspension when based on DUI convictions. We reverse the judgment, remand, and instruct the trial court to enter judgment for the DMV.

## FACTS[2]

On November 29, 1983, Moomjian, then a Georgia resident and licensed driver, violated the Georgia DUI law. On January 24, 1984, she pled no contest. On September 15, 1989, Moomjian again violated the Georgia DUI law. On October 9, 1989, Moomjian pled no contest to the second offense.

The Georgia DUI laws require license suspensions for first time offenders unless they plead no contest and agree to complete a basic drinking driver program. Moreover, if at least five years elapse between DUI offenses,

---

[1]Unless otherwise noted, all statutory references are to the Vehicle Code.

[2]The undisputed facts, admitted by DMV in its answer, are from Moomjian's writ petition and attached exhibits (copies of her California driver's license, DMV suspension notice, and DMV driving record).

Georgia treats subsequent DUI crimes as first offenses. Because more than five years passed between her Georgia DUI offenses, the Georgia courts treated Moomjian's second conviction as a first offense. Moomjian completed basic drinking driver programs after both convictions and thus maintained a valid Georgia driver's license throughout her Georgia residency.[3]

On October 1, 1989, Moomjian became a California resident. She "moved from Georgia to California for both personal and business reasons . . . unrelated to any factors having to do with her privilege to drive." Moomjian "acknowledged her residence change, turned her Georgia license in to the [DMV] and applied for a California driver's license." On December 22, 1989, the DMV issued Moomjian a California driver's license.

On April 12, 1990, the DMV notified Moomjian that, under the authority of section 13352, subdivision (a)(3), it had suspended her California driver's license for 18 months beginning October 9, 1989, because of her 2 Georgia DUI convictions.[4] The DMV did not offer Moomjian any administrative review of the suspension.

---

[3]Moomjian concedes the Georgia DUI laws proscribe essentially identical conduct to those of California, and also concedes the validity of her Georgia convictions. Although Moomjian's Georgia license remained valid, and she completed the basic drinking driver program after her first conviction, her petition implies she completed a similar program after her second conviction. That seems unlikely, since, as discussed below, she entered her second no contest plea eight days after becoming a California resident, and later surrendered her Georgia license to the DMV as part of her California license application. Resolution of this factual uncertainty is unnecessary to our opinion.

[4]Section 13352, subdivision (a)(3) provides in relevant part: "The [DMV] shall immediately suspend or revoke . . . the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of [the DUI laws] . . . . For purposes of this section, suspension or revocation shall be as follows: [¶] . . . [¶] (3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of [the DUI laws] punishable under Section 23165, the privilege shall be suspended for 18 months. . . ."

Section 23165 provides in relevant part: "If any person is convicted of a violation of [the DUI laws] and the offense occurred within seven years of a separate violation of [the DUI laws], which resulted in a conviction, . . . [t]he person's privilege to operate a motor vehicle shall be suspended by the [DMV] pursuant to paragraph (3) of subdivision (a) of Section 13352."

Section 13352.5, subdivision (a), explains that if those whose licenses otherwise would be subject to mandatory suspension because they committed two DUI offenses within seven years are placed on probation by a court on specified conditions, the DMV must restrict, rather than suspend, their licenses, unless suspension later is ordered by a court as a result of a probation violation.

Section 13352, subdivision (d) provides in relevant part: "A conviction of an offense in any state . . . of the United States . . . which, if committed in this state, would be a violation of [the DUI laws] . . . is a conviction of [the DUI laws] for purposes of this section. The [DMV] shall suspend or revoke the privilege to operate a motor vehicle pursuant to this section upon receiving notice of such a conviction."

Moomjian petitioned the trial court for a writ of mandamus, arguing that a mandatory suspension treated her more harshly than if her second conviction had occurred in California, where she could have sought a restricted license. Moomjian argued that section 13363, subdivision (a) gave the DMV discretion whether to suspend her license based on her Georgia convictions.[5] At the hearing, the DMV acknowledged Moomjian should have some remedy or forum in which to seek a restricted rather than suspended license, but argued that section 13352, subdivision (a)(3) mandated license suspension unless specified probationary conditions were imposed by a court. The DMV argued it lacked authority to grant probation or exercise discretion regarding the license suspension.

The trial court entered judgment for Moomjian, stayed the suspension (although limiting Moomjian to driving to and from, and as needed in, her work), issued the writ, and ordered the DMV to hold a hearing, exercise discretion, and decide whether to suspend Moomjian's license. The trial court explained its ruling: "[Moomjian] is not in the same position that she would have been in if the convictions had been in California because . . . if [the second conviction] had occurred in California, she would have had a chance to save her driver's license. [¶] She could have appealed to the court and the court could have ordered a . . . probationary scheme, that would have permitted her to keep a restricted driver's license. It would have permitted her to drive to and from work and in her work, if that was necessary. [¶] Because the convictions occurred in Georgia and because they were more than five years apart, they were each treated in Georgia as a first conviction and . . . she did not face any suspension of her driver's license in Georgia." "[I]f she goes back to the Georgia court the Georgia court doesn't have the authority to grant the restricted license because in Georgia it's treated simply as another first offense."

## ISSUE

The DMV contends the trial court erred because the DMV must suspend Moomjian's license and lacks discretion to restrict it.[6]

---

[5]Section 13363, subdivision (a) provides in relevant part: "The [DMV] may, in its discretion . . . suspend or revoke the privilege of any resident or nonresident to drive a motor vehicle in this State upon receiving notice of the conviction of the person in a state . . . of the United States . . . of an offense therein which, if committed in this State, would be grounds for the suspension or revocation of the privilege to operate a motor vehicle."

[6]The DMV raises two related points we need address only briefly. First, the DMV claims Moomjian erred in seeking administrative (Code Civ. Proc., § 1094.5) rather than ordinary (Code Civ. Proc., § 1085) mandamus. We need not address the distinctions between those sections or resolve the issue because, as Moomjian correctly notes, given the DMV's

## DISCUSSION

A writ of mandamus "may be issued by any court . . . to any . . . board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right . . . to which he is entitled, and from which he is unlawfully precluded by such . . . board or person." (Code Civ. Proc., § 1085.) "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. . . ." (Code Civ. Proc., § 1086.) ■ Where, as here, the facts are undisputed, we independently review the trial court's legal determination that section 13363, subdivision (a), which gives the DMV discretion whether to suspend Moomjian's license based on out-of-state convictions, controls over section 13352, subdivision (a)(3), which mandates license suspension based on in or out-of-state DUI convictions. (*Goddard* v. *South Bay Union High School Dist., supra*, 79 Cal.App.3d at pp. 104-105.)

■ Because driving is a privilege, not a right, license suspension, even where, as here, triggered by criminal convictions, is a civil, not a criminal, sanction. (See *Thomas* v. *Department of Motor Vehicles, supra*, 3 Cal.3d at p. 338.) Moreover, where, as here, the driver does not contest the accuracy of her DMV record or the validity of the suspension triggering convictions, suspension is mandatory, not discretionary, and the driver is not entitled to a DMV hearing. (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380, fn. 8 [211 Cal.Rptr. 748, 696 P.2d 141].)

Moomjian concedes she may avoid her relevant mandatory license suspension (§ 13352, subd. (a)(3)) only by being placed on probation by a court under the conditions specified in section 23166, subdivision (b). That section requires a minimum 48-hour jail sentence, payment of a minimum $390 fine,

concession that she justifiably could seek ordinary mandamus, her proceeding under the wrong section would not justify reversal. (*Eureka Teachers Assn.* v. *Board of Education* (1988) 199 Cal.App.3d 353, 364-366 [244 Cal.Rptr. 240]; *California Teachers Assn.* v. *Governing Board* (1977) 70 Cal.App.3d 833, 844 [139 Cal.Rptr. 155]; *Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 336 [136 Cal.Rptr. 421]; 8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, §§ 215-216, pp. 840-843.)

Second, the DMV argues that mandamus does not lie against it to attack the validity of a prior DUI conviction which triggers a license suspension, and discusses two relevant competing lines of cases. (Cf. *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335, 337-339 [90 Cal.Rptr. 586, 475 P.2d 858]; *Morris* v. *Department of Motor Vehicles* (1991) 231 Cal.App.3d 151, 154-161 [282 Cal.Rptr. 130]; *Gaston* v. *Department of Motor Vehicles* (1991) 230 Cal.App.3d 74, 77-81 [281 Cal.Rptr. 173]; and *Cook* v. *Department of Motor Vehicles* (1973) 33 Cal.App.3d 265, 267-268 [109 Cal.Rptr. 104] [all denying writ review], with *Axness* v. *Superior Court* (1988) 206 Cal.App.3d 1489, 1494-1496 [255 Cal.Rptr. 896] [permitting writ review].) As Moomjian correctly notes, however, we need not address this issue because she does not challenge the validity of either of her Georgia convictions.

proof of ability to respond in damages, and participation to the court's satisfaction in a second offender alcohol program for at least 18 months. ■ Moomjian argues that, because all her DUI convictions occurred in Georgia, she must receive a California forum, either a DMV or court hearing, to request imposition of the probationary terms required by section 23166, subdivision (b). Moomjian argues that section 13363, subdivision (a) authorizes such a hearing. Otherwise, Moomjian concludes, she is being treated differently than other twice convicted California drivers whose most recent conviction occurred in California.

We disagree. Underlying Moomjian's argument is the false assumption that she had no Georgia forum in which to seek imposition of the mandatory probation conditions required by section 23166, subdivision (b). Moomjian argues the Georgia court lacked jurisdiction to interpret California law or over the DMV. Even if true, that observation is irrelevant. Moomjian does not argue the Georgia court lacked jurisdiction to impose such probationary conditions, but implies it would have no interest in doing so. While that may be true, Moomjian does not claim that such conditions would be illegal if imposed at her request, nor that she was no longer subject to probationary regulation by the Georgia court merely because she moved to California. Moomjian did not allege the Georgia court refused to impose such conditions upon her request, or that such conditions were imposed but the DMV refused to acknowledge or honor them. Moomjian also did not allege that she completed her probationary period before moving to California, an impossibility since she was not sentenced until after changing her residence. Indeed, on appeal Moomjian implies she was placed on comparable probationary conditions because Georgia required participation in a first offender drinking driver program. However, she did not allege that program was comparable to the California second offender program or that she satisfied the other requirements of section 23166, subdivision (b). Thus, Moomjian had, but chose to ignore, a Georgia forum in which to seek probationary conditions sufficient to entitle her to a restricted license.

In addition, section 13363, subdivision (a) gives the DMV discretion to suspend California driver's licenses based on out-of-state convictions comparable to California offenses which "would be grounds for" suspension. Moomjian concedes that the Georgia DUI law is comparable to the California DUI law, but argues that because the license suspension provisions differ, the laws are not "comparable." However, as discussed above, license suspension is a civil, not criminal, sanction. Moreover, section 13352, subdivision (d) requires that the DMV treat any out-of-state DUI conviction the same as a California DUI conviction. Any differences in the license suspension provisions do not make Moomjian's Georgia DUI convictions incomparable to California DUI convictions.

California driver's licenses also may be suspended for conviction of a variety of non-DUI offenses. These include reckless driving, vehicular manslaughter, unlawful vehicle taking, driving over 100 miles per hour, refusing to take a chemical test after a DUI arrest, and hit and run. (See §§ 13350, 13351, 13353, 13354, 13355, 13357, 13361.) Some of these convictions mandate suspension while others make suspension discretionary with the DMV. The Legislature chose to mandate suspension, except where a court imposes the required probationary conditions, where the suspension is triggered by DUI convictions. Given the seriousness of alcohol-impaired driving, we see nothing inconsistent about such a statutory scheme. Thus, the more specific section 13352, subdivision (a)(3) controls over the more general section 13363, subdivision (a) where the suspension is triggered by DUI convictions. The trial court erred in concluding otherwise.

## DISPOSITION

We reverse the judgment. We remand the matter to the trial court with instructions that it vacate its stay order, dissolve the writ, and enter judgment for the DMV. The DMV is entitled to its costs on appeal.

Vogel (Miriam A.), J. and Aranda, J.,* concurred.

---

*Judge of the Municipal Court for the South Bay Judicial District sitting under assingnment by the Chairperson of the Judicial Council.